**EL DORADO TECHNICAL SERVICES, INC., Plaintiff, Appellant,**

v.

**UNION GENERAL DE TRABAJA- DORES DE PUERTO RICO, Defendant, Appellee.**

No. 91–2063.

United States Court of Appeals, First Circuit.

Heard March 3, 1992.
Decided April 13, 1992.

Maria Judith Ramos, with whom Lespier & Munoz Noya, San Juan, P.R., was on brief, for plaintiff, appellant.

Paul Schachter, with whom Nancy Macirowski and Reinhardt & Schachter, P.C., Newark, N.J., were on brief, for defendant, appellee.

Before BREYER, Chief Judge, SELYA and CYR, Circuit Judges.

SELYA, Circuit Judge.

Only rarely, and in the most compelling circumstances, will a federal court tinker with an arbitral award made under the aegis of a collective bargaining agreement. This case presents no such unusual occasion.

# I

## Background

El Dorado Technical Services, Inc. (El Dorado) is a construction company. Union General De Trabajadores de Puerto Rico

(the Union) is the authorized representative of the company's construction and maintenance employees in Puerto Rico. The collective bargaining agreement (Agreement) between the two provides for binding arbitration of disputes arising thereunder and further provides that the arbitrator's decision shall be final.

On July 13, 1990, El Dorado laid off Edwin Rosado Baez (Rosado). As a result, Rosado was unemployed for some seven weeks. A grievance was filed. Arbitration followed. The arbitrator was asked:

> To determine according to the facts and the applicable collective bargaining agreement if the lay-off of the complainant [Rosado] on July 13, 1990, was or [was] not justified. If not, the arbitrator shall determine the applicable relief.

At the hearing, the evidence conclusively established that Rosado, a veteran welder, was laid off for lack of work at a job site in San Juan. At about the same time, however, a new employee was hired by El Dorado to perform welding duties at a different project in Palo Seco. The newly hired welder started work on July 16, 1990. The Union contended that this assignment should have been offered to Rosado under Section 32 of the Agreement, which stipulated:

> Employees with several years of service with the COMPANY and who are employed at the time of signature of this AGREEMENT shall be considered preferred employees for reemployment.

El Dorado maintained that Section 32 applied only on a project-by-project basis, not on a company-wide basis.[1] Notwithstanding that Rosado was a "preferred employee[ ]" within the ambit of Section 32, it claimed the right to furlough him under Section 20, which read in pertinent part:

---

1. El Dorado argues to us, as it argued to the arbitrator, that Rosado's right to claim a preference applied only at the site where he had been working. The following passage typifies its approach:

    It is a known fact that the construction industry is characterized by its temporary status. As such, workers are hired for a specific project by each superintendent. The evidence

presented by the Company and the Agreement, both, demonstrated that in the construction industry the hiring of employees is not company wide, but rather done project by project.... [T]he Company does not have to transfer employees from project to project. Further, it is not feasible for the Company to do so.

Appellant's Brief at 6.

[T]he COMPANY shall have the right to organize, direct and control operations in all its works, employ workers, direct workers' crew in the field, select workers for the tasks, dismiss, suspend and discipline for legitimate causes, transfer, promote or lay-off employees for lack of work or for other legitimate reasons ... provided nevertheless that the COMPANY shall not use these rights ... in any way which may be in detriment or prejudice of this AGREEMENT.

The arbitrator harmonized the two clauses, reasoning that while El Dorado might from time to time find it advisable to furlough employees due to lack of work, and had the power to do so under the Agreement, it remained obligated, when feasible, to transfer workers "with several years of service" to vacant positions at other ongoing projects, thereby effectuating the objectives of Section 32. Thus, since Rosado met Section 32's requirements, and since there was no particular impediment to his working in Palo Seco, he should have been considered for the available position there and given preference over a new hire.

Nettled by the arbitrator's decision and concomitant bestowal of back pay, El Dorado sued to set aside the award. In the district court, the parties cross-moved for summary judgment. The district judge granted the Union's motion, thereby confirming the arbitral award. The company appeals.

## II

### The Legal Landscape

In labor arbitration, matters of contract interpretation are typically for the arbitrator, not for a reviewing court. While the arbitrator's award must draw its essence from the collective bargaining agreement, it need not mirror a judge's notion of how the agreement's language might best be interpreted or might most fairly be applied to a given set of facts. So long as the arbitrator, acting within the scope of his delegated authority, is arguably construing the contract, his decision must stand. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38,

108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987); *Dorado Beach Hotel Corp. v. Union de Trabajadores de la Industria Gastronomica, Local 610*, 959 F.2d 2, 3–4 (1st Cir. 1992); *Georgia–Pacific Corp. v. Local 27, Etc.*, 864 F.2d 940, 944 (1st Cir.1988). Put succinctly, then, a court should uphold an award that depends on an arbitrator's interpretation of a collective bargaining agreement if it can find, within the four corners of the agreement, any plausible basis for that interpretation. *See Berklee College of Music v. Berklee Chapter of Mass. Federation of Teachers, Local 4412*, 858 F.2d 31, 32–34 (1st Cir.1988), *cert. denied*, 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989). After all, "[t]he federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of [arbitral] awards." *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960).

## III

### Discussion

#### A.

##### Plausibility

This is a classic case in which a collective bargaining agreement can plausibly be interpreted in either of two ways. On the one hand, El Dorado's crabbed reading of Section 32, restricting preferential treatment for veteran employees to particular projects, fits comfortably with the language of Section 20 and the culture of the construction industry. On the other hand, the Union's indulgent reading of Section 32, extending preferential treatment for veteran employees to the company as a whole, fits equally comfortably with the language of the Agreement and the clause's discernible goal of rewarding loyalty and tenure. In the last analysis, both readings are plausible: neither reading is demonstrably right or demonstrably wrong. The arbitrator accepted the Union's version. The narrow scope of judicial

review forbids us from substituting our judgment for his.

■ Judges have no roving writ to second-guess arbitral decisions. When the language of the underlying contract, taken in context and with due regard for the surrounding circumstances, is fairly susceptible to differing meanings, a reviewing court must not meddle with an arbitrator's rendition. In such a situation, the arbitrator's choice between two permissible interpretations of a collective bargaining pact is simply not open to judicial oversight. *See Misco,* 484 U.S. at 38, 108 S.Ct. at 371; *Maine Central R.R. v. Brotherhood of Maintenance of Way Employees,* 873 F.2d 425, 429 (1st Cir.1989); *Berklee College,* 858 F.2d at 34. If the rule were otherwise, the process of arbitration would be reduced to an empty exercise.

### B.

### *Appellant's Remaining Arguments*

In an effort to deflect the force of this doctrine, El Dorado constructs a series of fancied obstacles to confirmation. We pause briefly to address four of these points, rejecting the remainder out of hand.

■ 1. *Erroneous Factfinding.* Appellant argues that the arbitrator did not understand the actual facts. It says, for example, that individual superintendents—not the company—make the hiring decisions at the various job sites;[2] that Rosado was not sufficiently aggressive in pursuing his preferential status; and that the Palo Seco position had been filled before Rosado was sent packing. We do not deign to set foot upon this slippery slope. Although it may be possible to quibble over various facts found by the arbitrator (or implicit in his decision), the standard of review is unrelenting: as a general proposition, an arbitrator's factual findings are not open to judicial challenge. Even if the arbitrator was seriously mistaken about some of the facts, his award must stand. *See Air Line Pilots Ass'n Int'l v. Aviation Ass'n, Inc.,*

955 F.2d 90, 93 (1st Cir.1992) ("Disputes of fact should have been resolved by the arbitrator, and may not be addressed by the ... court, even if the court is convinced that the arbitrator committed serious error."); *Georgia–Pacific,* 864 F.2d at 944; *Bettencourt v. Boston Edison Co.,* 560 F.2d 1045, 1050 (1st Cir.1977); *see also Misco,* 484 U.S. at 38–39, 108 S.Ct. at 371.

Here, we see no sign of a serious mistake, much less an arbitral finding that, by any stretch of the most active imagination, might forthrightly be termed "unfounded in reason and fact." *Local 1445, United Food & Commercial Workers v. Stop & Shop Cos.,* 776 F.2d 19, 21 (1st Cir.1985). Nor is there any cause to suspect that the award is "mistakenly based on a crucial assumption that is a proven non-fact." *Id.* at 22. In a nutshell, appellant's "erroneous factfinding" argument is a thinly disguised attempt to retry the arbitration case in a judicial forum. As such, it invites us to relegate accepted guidelines for judicial review of arbitral awards to the scrap heap. We decline the invitation.

■ 2. *Scope of the Arbitration.* In an assertion that sheds far more heat than light, appellant urges us to find that the arbitrator exceeded the scope of the submission and, therefore, acted *ultra vires.* The record belies the assertion. To be sure, the Union initially alleged a violation of Section 20 rather than Section 32. But, once an issue has been committed to arbitration, both the collective bargaining agreement and the submission itself should be taken into account in determining the scope of the submission. *See Challenger Caribbean Corp. v. Union Gen. De Trabajadores,* 903 F.2d 857, 866 (1st Cir.1990); *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly, Etc., Union, Local No. 1,* 611 F.2d 580, 584 (5th Cir.1980). The scope of the instant controversy, as framed by the question jointly submitted to the arbitrator by the parties, quoted *supra* p. 318, was broad enough to permit consideration

**2.** This seems a curious contention. How else can a corporation act, but through its officers, agents, and employees?

of the effect of Section 32 on Rosado's furlough.

■ The arbitrator plainly acted on the assumption that his assignment required him to mull the entire Agreement, not merely to focus on Section 20 in a vacuum. This, then, ends the matter. An arbitrator's view of the scope of the issue committed to his care is entitled to the same far-reaching respect and deference as is normally accorded to the arbitrator's interpretation of the collective bargaining agreement itself. *See Dorado Beach Hotel*, 959 F.2d at 4; *Pack Concrete, Inc. v. Cunningham*, 866 F.2d 283, 285 (9th Cir.1989). Given this generous formulation, it borders on the chimerical to suggest that the arbitrator exceeded the scope of his authority in electing to consider the Agreement as a whole.

3. *Lack of a Full Record.* The arbitration hearing was tape-recorded. After making the award, the arbitrator erased the tape. El Dorado now claims that its access to the courts has been frustrated by this occurrence.

■ The lack of a verbatim record of an arbitration proceeding is worthy of a reviewing court's consideration, if at all, only when that circumstance prejudices a party's substantial rights. *See, e.g., Girani v. F.A.A.*, 924 F.2d 237, 240 n. 5 (Fed. Cir.1991) (failure of arbitrator to arrange for a transcript "requires reversal only in the event of harmful error"); *cf. Harp v. Dept. of the Army*, 791 F.2d 161, 163 (Fed. Cir.1986) (unavailability of transcript of administrative proceeding does not require remand where petitioner fails to show that the existing record is inadequate to permit full consideration of the issues raised in his appeal). Here, any bevue was harmless. The arbitrator, although not required to do so, *see Raytheon Co. v. Automated Business Sys. Inc.*, 882 F.2d 6, 8 (1st Cir.1989), issued a written decision that set forth, in considerable detail, the basis for the award. While appellant attacks the award on several fronts—it assails the arbitrator's interpretation of the Agreement, the relative weight that he assigned to various facts, and the inferences which he chose to draw—the principal facts underlying the award remain, to all intents and purposes, uncontradicted. Because the company has identified no genuine issue of material fact that could only be resolved by reference to a verbatim transcript of the arbitration hearing, the arbitrator's failure to retain the tape could not have prejudiced its substantial rights.

4. *The Subsequent Arbitral Award.* Appellant's last hurrah directs our attention to an arbitral award entered on November 27, 1991 (well after the district court granted summary judgment for the Union in the case at bar). In the subsequent proceeding, a different arbitrator, construing the Agreement in a roughly equivalent situation, rejected an employee's grievance, adopting the company's interpretation of the interplay between Sections 20 and 32. We fail to see how this later ruling enters into the picture.

■ It is black letter law that arbitration awards are not entitled to the precedential effect accorded to judicial decisions. Indeed, an arbitration award is not considered conclusive or binding in subsequent cases involving the same contract language but different incidents or grievances. *See Courier–Citizen Co. v. Boston Electrotypers Union No. 11*, 702 F.2d 273, 280 (1st Cir.1983); *Westinghouse Elevators of Puerto Rico, Inc. v. S.I.U. de Puerto Rico*, 583 F.2d 1184, 1186–87 (1st Cir.1978). Since an arbitrator's refusal to follow a previous arbitrator's interpretation of a specific contractual provision does not expose an ensuing award to judicial tinkering, *Bacardi Corp. v. Congreso de Uniones Industriales*, 692 F.2d 210, 212 (1st Cir. 1982), *a fortiori*, an arbitrator's failure to anticipate a subsequent arbitrator's interpretation of a specific contractual provision cannot undercut the validity of the earlier award.[3]

3. We note, with a modicum of irony, that, if arbitral awards were binding in subsequent proceedings under the same collective bargaining agreement, then, logically, the result reached by the arbitrator in this case should have governed the course of the later arbitration. Appellant's

## IV

### Conclusion

We need go no further. A case in which a court can, and should, upset an arbitral award is, as we have said, a *rara avis*. This appeal, though apterous, is not so uncommon a species. The appeal simply will not fly.

*Affirmed.*

argument conveniently overlooks this boomer-    ang effect.