Edward LAROCQUE, et al.,
Plaintiffs, Appellants,

v.

R.W.F., INC., et al., Defendants,
Appellees.

No. 93–1473.

United States Court of Appeals,
First Circuit.

Heard Oct. 4, 1993.

Decided Nov. 2, 1993.

Thomas J. Young with whom Young &
LaPuzza, Omaha, NE, Thomas J. McAndrew,
Providence, RI, and Patricia E. Andrews,
Washington, DC, were on brief, for plaintiffs-
appellants.

Marc B. Gursky, Providence, RI, for appel-
lee, Teamsters Local 251.

James M. Green with whom Powers, Kind-
er & Keeney, Inc., Providence, RI, were on
brief, for defendants-appellees R.W.F., Inc.
and Wetterau, Inc.

Before CYR, Circuit Judge, ROSENN,*
Senior Circuit Judge, and STAHL, Circuit
Judge.

CYR, Circuit Judge.

Appellants challenge a district court judg-
ment directing the enforcement of a labor
arbitration award upholding a proposed
"dovetailing" of the separate seniority lists
maintained by the defendant-appellee,
R.W.F., Inc. prior to the consolidation of its
two divisions. Because we conclude that the

* Of the Third Circuit, sitting by designation.

arbitral award was within the scope of the parties' arbitral submission and drew its essence from their collective bargaining agreements, we affirm the district court judgment.

# I

## BACKGROUND

Appellants were employed at Laurans Standard Grocery Company (Laurans), in Cranston, Rhode Island, an unincorporated division of defendant-appellee R.W.F., Inc. (RWF), which also operated a second division, Roger Williams Foods, Inc. (Roger Williams), a separate corporation, in Cumberland, Rhode Island.[1] Each division had a separate collective bargaining agreement (CBA) with Teamsters Local 251.

After acquiring RWF in 1988, appellee Wetterau, Inc. announced plans to relocate the Roger Williams division operations outside of Rhode Island, and transfer the Roger Williams workers to the Laurans operation. RWF proposed to "dovetail" (*i.e.*, integrate) the Roger Williams seniority list into the Laurans seniority list. The alternative would have been to "endtail" the Roger Williams workers; that is, treat them as new employees and eliminate their Roger Williams seniority.[2]

After the workers at the Laurans plant [collectively: LaRocque] filed a grievance protesting the "dovetailing" proposal, the matter was submitted to arbitration. The basic dispute that drove the arbitration was whether Laurans and Roger Williams were separate "employers" or whether RWF should be considered the "employer" of the workers at both divisions. Under both CBAs, the term "employer" was defined as the division; "seniority" as "continuous service with the Employer"; and RWF was not mentioned. The arbitrator found, nonetheless, that RWF was the *de facto* employer of the workers at both divisions, based on, *inter alia*, the history of RWF's development, the

shared administrative and executive operations of the two divisions, and the fact that "Laurans" was merely an unregistered tradename, not a separate legal entity. LaRocque sought judicial review of the arbitral award in federal district court pursuant to 29 U.S.C. § 185, and the district court ultimately granted summary judgment directing enforcement. *See Larocque v. R.W.F., Inc.*, 793 F.Supp. 386 (D.R.I.1992).

# II

## DISCUSSION

■ The highly deferential standard governing judicial review of labor arbitration awards is described in *El Dorado Technical Servs., Inc. v. Union General de Trabajadores de Puerto Rico*, 961 F.2d 317, 319 (1st Cir.1992):

> [A] court should uphold an award that depends on an arbitrator's interpretation of a collective bargaining agreement if it can find, within the four corners of the agreement, *any plausible basis for that interpretation.*

(emphasis added; citations omitted). *See generally United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987). A judicial challenge to arbitral authority requires the reviewing court to consider both the CBA and the arbitral submission, *El Dorado*, 961 F.2d at 320; *Challenger Caribbean Corp. v. Union General de Trabajadores*, 903 F.2d 857, 860–61 (1st Cir.1990) (citing cases), bearing foremost in mind the admonition that "courts [do not have] the final say on the merits of [arbitral] awards," *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). "Of course, this does not mean that an arbitrator has 'carte blanche approval' for any and every arbitral decision...." *Dorado Beach Hotel Corp. v. Union de Trabajadores de la Industria Gas-*

---

1. RWF was founded as a grocery distributor in 1945. In 1973, it branched out and created Laurans, which shared warehouse space with Roger Williams until 1987 when the Cranston facility opened.

2. This case involves "competitive-status" seniority lists, which determine the order in which workers are laid off and rehired. Thus, "endtailing" would have left the most senior Roger Williams worker with less seniority than the most junior Laurans worker.

*tronomica Local 610,* 959 F.2d 2, 4 (1st Cir. 1992) (citations omitted). An enforceable award "must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." *Misco, Inc.,* 484 U.S. at 38; *see also Challenger Caribbean,* 903 F.2d at 861.

### 1. The Scope of the Arbitral Submission.

■ Like many a party aggrieved by an arbitral award, LaRocque comes poorly clad for the challenge, with only three appellate claims meriting brief discussion. First, LaRocque contends that the award exceeded the scope of the arbitrator's authority, a claim that flies in the face of the joint arbitral submission:

> Did RWF, Inc. violate the [CBAs] between the parties by proposing to dovetail the seniority lists of its employees under the Laurans Standard Agreement and its employees under the Roger Williams Agreement for competitive status seniority upon consolidating its regional operations? If so, what shall the remedy be?

Thus, the parties mutually agreed that the arbitrator should reconcile the language in the separate CBAs, neither of which afforded definitive guidance in the context of an unforeseen consolidation of the two divisions, *and determine an appropriate remedy. See Challenger Caribbean,* 903 F.2d at 860–61; *Georgia–Pacific Corp. v. Local 27, United Paperworkers Int'l Union,* 864 F.2d 940, 944 (1st Cir.1988). Moreover, "[a]n arbitrator's view of the scope of the issue ... is entitled to the same ... deference ... normally accorded to the arbitrator's interpretation of the collective bargaining agreement itself." *El Dorado,* 961 F.2d at 321. Furthermore, once having agreed to the arbitral submission, it was too late for Laurans' workers to say that the arbitrator acted *ultra vires* merely because the remedy was not what they had hoped.

### 2. The Arbitrator's Factual Findings.

■ LaRocque next insists that the arbitrator's finding that RWF was the *de facto* employer of the workers at both locations is without evidentiary support. This tactic, too, is unavailing.

Few aggrieved parties surmount the deferential standard of judicial review accorded factual findings within the scope of an arbitral submission:

> [T]he standard of review is unrelenting: as a general proposition, an arbitrator's factual findings are not open to judicial challenge. Even if the arbitrator was seriously mistaken about some of the facts, his award must stand.

*El Dorado,* 961 F.2d at 320 (citing cases). As the evidence presented to the arbitrator plainly demonstrates, there is nothing approaching "serious error" in this case. First, Laurans is not a separate legal entity. Second, Laurans Standard, so designated by RWF in 1973, operated out of the same facility as Roger Williams until 1987. Third, the two divisions had the same president and the same accounting and administrative staff. Finally, the evidence demonstrated that substantially the same working conditions and pay rates prevailed within both divisions, and that virtually all work was interchangeable between workers in the two divisions. We are not permitted to second-guess the factual findings of a labor arbitrator in the face of such a record. *See Air Line Pilots Ass'n Int'l v. Aviation Ass'n Inc.,* 955 F.2d 90, 93 (1st Cir.1992).

### 3. The "No-modification" Clauses.

■ Finally, LaRocque points to purported curbs on the power of the arbitrator, as set forth in the CBAs: "the arbitrator shall not have the power to add to or subtract from or modify any provisions of the agreement." These standard "no-modification" clauses, *see Local 1445, United Food & Commercial Workers Int'l Union v. Stop & Shop Cos.,* 776 F.2d 19, 22 (1st Cir.1985), reinforce the admonition in *Misco, Inc.,* 484 U.S. at 38, 108 S.Ct. at 371, that legitimate arbitral awards "draw [their] essence from the contract."

At the mutual invitation of the parties, the arbitrator was empowered to decide whether the proposal to "dovetail" the two seniority lists would violate the CBAs, *in the circumstances posed by the consolidation. See supra* at p. 97. After determining that the RWF proposal would not violate the CBAs,

the arbitrator, again at the explicit invitation of the parties, undertook to determine the appropriate remedy. Since it is indisputable that the language in neither CBA precluded "dovetailing" in the circumstances of a consolidation, the arbitral award directing "dovetailing" clearly derived from a permissible interpretation of the agreement in the changed circumstances, and did not "simply reflect the arbitrator's own notions of industrial justice," *id.* As the Court carefully noted in *Misco, Inc.,* "it must be remembered that grievance and arbitration procedures are part and parcel of the ongoing process of collective bargaining. It is through these processes that the *supplementary* rules of the plant are established." 484 U.S. at 38, 108 S.Ct. at 371 (emphasis added). Thus, viewed against the backdrop of the CBAs and the joint arbitral submission, as well as the surrounding circumstances, *see El Dorado,* 961 F.2d at 320, the challenged award was well within the consensual delegation of arbitral authority, the "no-modification" clause notwithstanding. *See High Concrete Structures, Inc. v. United Elec., Radio and Mach. Workers Local 166,* 879 F.2d 1215, 1219 (3d Cir.1989) (holding: "no-modification" clause does not "prohibit the parties from agreeing to a submission which is broader.")

### III

### CONCLUSION

The joint arbitral submission empowered the arbitrator to harmonize the parallel contract provisions in dispute and to fashion a remedy in light of the surrounding circumstances. As the arbitral award faithfully drew its essence from the collective bargaining agreements, it represents neither an arrogation of arbitral power, nor an impermissible modification. The district court judgment must be affirmed.

*Affirmed.*