UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1473

EDWARD LAROCQUE, ET AL.,

Plaintiffs, Appellants,

v.

R.W.F., INC., ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Raymond J. Pettine, Senior U.S. District Judge]

Before

Cyr, Circuit Judge,

Rosenn,* Senior Circuit Judge,

and Stahl, Circuit Judge.

Thomas J. Young with whom Young & LaPuzza, Thomas J. McAndrew,

and Patricia E. Andrews were on brief for appellants.

Marc B. Gursky for appellee Teamsters Local 251.

James M. Green with whom Powers, Kinder & Keeney, Inc. were on

brief for appellees R.W.F., Inc. and Wetterau, Inc.

November 2, 1993

*Of the Third Circuit, sitting by designation.

CYR, Circuit Judge. Appellants challenge a district
CYR, Circuit Judge.

court judgment directing the enforcement of a labor arbitration

award upholding a proposed "dovetailing" of the separate seniori-

ty lists maintained by the defendant-appellee, R.W.F, Inc. prior

to the consolidation of its two divisions. Because we conclude

that the arbitral award was within the scope of the parties'

arbitral submission and drew its essence from their collective

bargaining agreements, we affirm the district court judgment.

I

BACKGROUND

Appellants were employed at Laurans Standard Grocery

Company (Laurans), in Cranston, Rhode Island, an unincorporated

division of defendant-appellee R.W.F., Inc. (RWF), which also

operated a second division, Roger Williams Foods, Inc. (Roger

Williams), a separate corporation, in Cumberland, Rhode Island.1

Each division had a separate collective bargaining agreement

(CBA) with Teamsters Local 251.

After acquiring RWF in 1988, appellee Wetterau, Inc.

announced plans to relocate the Roger Williams division opera-

tions outside of Rhode Island, and transfer the Roger Williams

workers to the Laurans operation. RWF proposed to "dovetail"

1RWF was founded as a grocery distributor in 1945. In 1973,
it branched out and created Laurans, which shared warehouse space
with Roger Williams until 1987 when the Cranston facility opened.

2

(i.e., integrate) the Roger Williams seniority list into the

Laurans seniority list. The alternative would have been to

"endtail" the Roger Williams workers; that is, treat them as new

employees and eliminate their Roger Williams seniority.2

After the workers at the Laurans plant [collectively:

LaRocque] filed a grievance protesting the "dovetailing" propos-

al, the matter was submitted to arbitration. The basic dispute

that drove the arbitration was whether Laurans and Roger Williams

were separate "employers" or whether RWF should be considered the

"employer" of the workers at both divisions. Under both CBAs,

the term "employer" was defined as the division; "seniority" as

"continuous service with the Employer"; and RWF was not men-

tioned. The arbitrator found, nonetheless, that RWF was the de

facto employer of the workers at both divisions, based on, inter

alia, the history of RWF's development, the shared administrative

and executive operations of the two divisions, and the fact that

"Laurans" was merely an unregistered tradename, not a separate

legal entity. LaRocque sought judicial review of the arbitral

award in federal district court pursuant to 29 U.S.C. 185, and

the district court ultimately granted summary judgment directing

2This case involves "competitive-status" seniority lists,
which determine the order in which workers are laid off and
rehired. Thus, "endtailing" would have left the most senior
Roger Williams worker with less seniority than the most junior
Laurans worker.

3

enforcement. See LaRocque v. R.W.F., Inc., 793 F. Supp. 386

(D.R.I. 1992).

II

DISCUSSION

The highly deferential standard governing judicial

review of labor arbitration awards is described in El Dorado

Technical Servs., Inc. v. Union General de Trabajadores de Puerto

Rico, 961 F.2d 317, 319 (1st Cir. 1992):

[A] court should uphold an award that depends
on an arbitrator's interpretation of a col-
lective bargaining agreement if it can find,
within the four corners of the agreement, any

plausible basis for that interpretation.

(emphasis added; citations omitted). See generally United Paper-

workers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987). A

judicial challenge to arbitral authority requires the reviewing

court to consider both the CBA and the arbitral submission, El

Dorado, 961 F.2d at 320; Challenger Caribbean Corp. v. Union

General de Trabajadores, 903 F.2d 857, 860-61 (1st Cir. 1990)

(citing cases), bearing foremost in mind the admonition that

"courts [do not have] the final say on the merits of [arbitral]

awards," United Steelworkers of America v. Enterprise Wheel & Car

Corp., 363 U.S. 593, 596 (1960). "Of course, this does not mean

that an arbitrator has 'carte blanche approval' for any and every

arbitral decision . . . ." Dorado Beach Hotel Corp. v. Union de

4

Trabajadores de la Industria Gastronomica Local 610, 959 F.2d 2,

4 (1st Cir. 1992) (citations omitted). An enforceable award

"must draw its essence from the contract and cannot simply

reflect the arbitrator's own notions of industrial justice."

Misco, Inc., 484 U.S. at 38; see also Challenger Caribbean, 903

F.2d at 861.

1. The Scope of the Arbitral Submission.

Like many a party aggrieved by an arbitral award,

LaRocque comes poorly clad for the challenge, with only three

appellate claims meriting brief discussion. First, LaRocque

contends that the award exceeded the scope of the arbitrator's

authority, a claim that flies in the face of the joint arbitral

submission:

Did RWF, Inc. violate the [CBAs] between the
parties by proposing to dovetail the seniori-
ty lists of its employees under the Laurans
Standard Agreement and its employees under
the Roger Williams Agreement for competitive
status seniority upon consolidating its
regional operations? If so, what shall the
remedy be?

Thus, the parties mutually agreed that the arbitrator

should reconcile the language in the separate CBAs, neither of

which afforded definitive guidance in the context of an unfore-

seen consolidation of the two divisions, and determine an appro-

priate remedy. See Challenger Caribbean, 903 F.2d at 860-61;

Georgia-Pacific Corp. v. Local 27, United Paperworkers Int'l

Union, 864 F.2d 940, 944 (1st Cir. 1988). Moreover, "[a]n arbi-

5

trator's view of the scope of the issue . . . is entitled to the

same . . . deference . . . normally accorded to the arbitrator's

interpretation of the collective bargaining agreement itself."

El Dorado, 961 F.2d at 321. Furthermore, once having agreed to

the arbitral submission, it was too late for Laurans' workers to

say that the arbitrator acted ultra vires merely because the

remedy was not what they had hoped.

2. The Arbitrator's Factual Findings.

LaRocque next insists that the arbitrator's finding

that RWF was the de facto employer of the workers at both loca-

tions is without evidentiary support. This tactic, too, is

unavailing.

Few aggrieved parties surmount the deferential standard

of judicial review accorded factual findings within the scope of

an arbitral submission:

[T]he standard of review is unrelenting: as
a general proposition, an arbitrator's factu-
al findings are not open to judicial chal-
lenge. Even if the arbitrator was seriously
mistaken about some of the facts, his award
must stand.

El Dorado, 961 F.2d at 320 (citing cases). As the evidence

presented to the arbitrator plainly demonstrates, there is

nothing approaching "serious error" in this case. First, Laurans

is not a separate legal entity. Second, Laurans Standard, so

designated by RWF in 1973, operated out of the same facility as

Roger Williams until 1987. Third, the two divisions had the same

6

president and the same accounting and administrative staff.

Finally, the evidence demonstrated that substantially the same

working conditions and pay rates prevailed within both divisions,

and that virtually all work was interchangeable between workers

in the two divisions. We are not permitted to second-guess the

factual findings of a labor arbitrator in the face of such a

record. See Air Line Pilots Ass'n Int'l v. Aviation Ass'n Inc.,

955 F.2d 90, 93 (1st Cir. 1992).

3. The "No-modification" Clauses.

Finally, LaRocque points to purported curbs on the

power of the arbitrator, as set forth in the CBAs: "the arbitra-

tor shall not have the power to add to or subtract from or modify

any provisions of the agreement." These standard "no-modifica-

tion" clauses, see Local 1445, United Food & Commercial Workers

Int'l Union v. Stop & Shop Cos., 776 F.2d 19, 22 (1st Cir. 1985),

reinforce the admonition in Misco, Inc., 484 U.S. at 38, that

legitimate arbitral awards "draw [their] essence from the con-

tract."

At the mutual invitation of the parties, the arbitrator

was empowered to decide whether the proposal to "dovetail" the

two seniority lists would violate the CBAs, in the circumstances

posed by the consolidation. See supra at p.5. After determining

that the RWF proposal would not violate the CBAs, the arbitrator,

again at the explicit invitation of the parties, undertook to

7

determine the appropriate remedy. Since it is indisputable that

the language in neither CBA precluded "dovetailing" in the

circumstances of a consolidation, the arbitral award directing

"dovetailing" clearly derived from a permissible interpretation

of the agreement in the changed circumstances, and did not

"simply reflect the arbitrator's own notions of industrial jus-

tice," id. As the Court carefully noted in Misco, Inc., "it must

be remembered that grievance and arbitration procedures are part

and parcel of the ongoing process of collective bargaining. It

is through these processes that the supplementary rules of the

plant are established." 484 U.S. at 38 (emphasis added). Thus,

viewed against the backdrop of the CBAs and the joint arbitral

submission, as well as the surrounding circumstances, see El

Dorado, 961 F.2d at 320, the challenged award was well within the

consensual delegation of arbitral authority, the "no-modifica-

tion" clause notwithstanding. See High Concrete Structures, Inc.

v. United Elec., Radio and Mach. Workers Local 166, 879 F.2d

1215, 1219 (3d Cir. 1989) (holding: "no-modification" clause

does not "prohibit the parties from agreeing to a submission

which is broader.")

III

CONCLUSION

8

The joint arbitral submission empowered the arbitrator

to harmonize the parallel contract provisions in dispute and to

fashion a remedy in light of the surrounding circumstances. As

the arbitral award faithfully drew its essence from the collec-

tive bargaining agreements, it represents neither an arrogation

of arbitral power, nor an impermissible modification. The

district court judgment must be affirmed.

Affirmed.
Affirmed.

9