USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1473 EDWARD LAROCQUE, ET AL., Plaintiffs, Appellants, v. R.W.F., INC., ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Raymond J. Pettine, Senior U.S. District Judge] __________________________ ____________________ Before Cyr, Circuit Judge, _____________ Rosenn,* Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Thomas J. Young with whom Young & LaPuzza, Thomas J. McAndrew, ________________ _______________ ___________________ and Patricia E. Andrews were on brief for appellants. ___________________ Marc B. Gursky for appellee Teamsters Local 251. ______________ James M. Green with whom Powers, Kinder & Keeney, Inc. were on _______________ ______________________________ brief for appellees R.W.F., Inc. and Wetterau, Inc. ____________________ November 2, 1993 ____________________ __________________ *Of the Third Circuit, sitting by designation. CYR, Circuit Judge. Appellants challenge a district CYR, Circuit Judge. ______________ court judgment directing the enforcement of a labor arbitration award upholding a proposed "dovetailing" of the separate seniori- ty lists maintained by the defendant-appellee, R.W.F, Inc. prior to the consolidation of its two divisions. Because we conclude that the arbitral award was within the scope of the parties' arbitral submission and drew its essence from their collective bargaining agreements, we affirm the district court judgment. I I BACKGROUND BACKGROUND __________ Appellants were employed at Laurans Standard Grocery Company (Laurans), in Cranston, Rhode Island, an unincorporated division of defendant-appellee R.W.F., Inc. (RWF), which also operated a second division, Roger Williams Foods, Inc. (Roger Williams), a separate corporation, in Cumberland, Rhode Island.1 Each division had a separate collective bargaining agreement (CBA) with Teamsters Local 251. After acquiring RWF in 1988, appellee Wetterau, Inc. announced plans to relocate the Roger Williams division opera- tions outside of Rhode Island, and transfer the Roger Williams workers to the Laurans operation. RWF proposed to "dovetail" ____________________ 1RWF was founded as a grocery distributor in 1945. In 1973, it branched out and created Laurans, which shared warehouse space with Roger Williams until 1987 when the Cranston facility opened. 2 (i.e., integrate) the Roger Williams seniority list into the ____ Laurans seniority list. The alternative would have been to "endtail" the Roger Williams workers; that is, treat them as new employees and eliminate their Roger Williams seniority.2 After the workers at the Laurans plant [collectively: LaRocque] filed a grievance protesting the "dovetailing" propos- al, the matter was submitted to arbitration. The basic dispute that drove the arbitration was whether Laurans and Roger Williams were separate "employers" or whether RWF should be considered the "employer" of the workers at both divisions. Under both CBAs, the term "employer" was defined as the division; "seniority" as "continuous service with the Employer"; and RWF was not men- tioned. The arbitrator found, nonetheless, that RWF was the de __ facto employer of the workers at both divisions, based on, inter _____ _____ alia, the history of RWF's development, the shared administrative ____ and executive operations of the two divisions, and the fact that "Laurans" was merely an unregistered tradename, not a separate legal entity. LaRocque sought judicial review of the arbitral award in federal district court pursuant to 29 U.S.C. 185, and the district court ultimately granted summary judgment directing ____________________ 2This case involves "competitive-status" seniority lists, which determine the order in which workers are laid off and rehired. Thus, "endtailing" would have left the most senior Roger Williams worker with less seniority than the most junior Laurans worker. 3 enforcement. See LaRocque v. R.W.F., Inc., 793 F. Supp. 386 ___ ________ ____________ (D.R.I. 1992). II II DISCUSSION DISCUSSION __________ The highly deferential standard governing judicial review of labor arbitration awards is described in El Dorado __________ Technical Servs., Inc. v. Union General de Trabajadores de Puerto ______________________ _______________________________________ Rico, 961 F.2d 317, 319 (1st Cir. 1992): ____ [A] court should uphold an award that depends on an arbitrator's interpretation of a col- lective bargaining agreement if it can find, within the four corners of the agreement, any ___ plausible basis for that interpretation. _________ _____ ___ ____ ______________ (emphasis added; citations omitted). See generally United Paper- ___ _________ _____________ workers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987). A ___________________ ___________ judicial challenge to arbitral authority requires the reviewing court to consider both the CBA and the arbitral submission, El __ Dorado, 961 F.2d at 320; Challenger Caribbean Corp. v. Union ______ ___________________________ _____ General de Trabajadores, 903 F.2d 857, 860-61 (1st Cir. 1990) ________________________ (citing cases), bearing foremost in mind the admonition that "courts [do not have] the final say on the merits of [arbitral] awards," United Steelworkers of America v. Enterprise Wheel & Car ______________________________ ______________________ Corp., 363 U.S. 593, 596 (1960). "Of course, this does not mean _____ that an arbitrator has 'carte blanche approval' for any and every arbitral decision . . . ." Dorado Beach Hotel Corp. v. Union de _________________________ ________ 4 Trabajadores de la Industria Gastronomica Local 610, 959 F.2d 2, ____________________________________________________ 4 (1st Cir. 1992) (citations omitted). An enforceable award "must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." Misco, Inc., 484 U.S. at 38; see also Challenger Caribbean, 903 ___________ ___ ____ ____________________ F.2d at 861. 1. The Scope of the Arbitral Submission. 1. The Scope of the Arbitral Submission. ____________________________________ Like many a party aggrieved by an arbitral award, LaRocque comes poorly clad for the challenge, with only three appellate claims meriting brief discussion. First, LaRocque contends that the award exceeded the scope of the arbitrator's authority, a claim that flies in the face of the joint arbitral submission: Did RWF, Inc. violate the [CBAs] between the parties by proposing to dovetail the seniori- ty lists of its employees under the Laurans Standard Agreement and its employees under the Roger Williams Agreement for competitive status seniority upon consolidating its regional operations? If so, what shall the remedy be? Thus, the parties mutually agreed that the arbitrator should reconcile the language in the separate CBAs, neither of which afforded definitive guidance in the context of an unfore- seen consolidation of the two divisions, and determine an appro- ___ _________ __ ______ priate remedy. See Challenger Caribbean, 903 F.2d at 860-61; ______ ______ ___ _____________________ Georgia-Pacific Corp. v. Local 27, United Paperworkers Int'l ______________________ _____________________________________ Union, 864 F.2d 940, 944 (1st Cir. 1988). Moreover, "[a]n arbi- _____ 5 trator's view of the scope of the issue . . . is entitled to the same . . . deference . . . normally accorded to the arbitrator's interpretation of the collective bargaining agreement itself." El Dorado, 961 F.2d at 321. Furthermore, once having agreed to __________ the arbitral submission, it was too late for Laurans' workers to say that the arbitrator acted ultra vires merely because the _____ _____ remedy was not what they had hoped. 2. The Arbitrator's Factual Findings. 2. The Arbitrator's Factual Findings. _________________________________ LaRocque next insists that the arbitrator's finding that RWF was the de facto employer of the workers at both loca- __ _____ tions is without evidentiary support. This tactic, too, is unavailing. Few aggrieved parties surmount the deferential standard of judicial review accorded factual findings within the scope of an arbitral submission: [T]he standard of review is unrelenting: as a general proposition, an arbitrator's factu- al findings are not open to judicial chal- lenge. Even if the arbitrator was seriously mistaken about some of the facts, his award must stand. El Dorado, 961 F.2d at 320 (citing cases). As the evidence __________ presented to the arbitrator plainly demonstrates, there is nothing approaching "serious error" in this case. First, Laurans is not a separate legal entity. Second, Laurans Standard, so designated by RWF in 1973, operated out of the same facility as Roger Williams until 1987. Third, the two divisions had the same 6 president and the same accounting and administrative staff. Finally, the evidence demonstrated that substantially the same working conditions and pay rates prevailed within both divisions, and that virtually all work was interchangeable between workers in the two divisions. We are not permitted to second-guess the factual findings of a labor arbitrator in the face of such a record. See Air Line Pilots Ass'n Int'l v. Aviation Ass'n Inc., ___ ___________________________ ____________________ 955 F.2d 90, 93 (1st Cir. 1992). 3. The "No-modification" Clauses. 3. The "No-modification" Clauses. _____________________________ Finally, LaRocque points to purported curbs on the power of the arbitrator, as set forth in the CBAs: "the arbitra- tor shall not have the power to add to or subtract from or modify any provisions of the agreement." These standard "no-modifica- tion" clauses, see Local 1445, United Food & Commercial Workers ___ _____________________________________________ Int'l Union v. Stop & Shop Cos., 776 F.2d 19, 22 (1st Cir. 1985), ___________ ________________ reinforce the admonition in Misco, Inc., 484 U.S. at 38, that ___________ legitimate arbitral awards "draw [their] essence from the con- tract." At the mutual invitation of the parties, the arbitrator was empowered to decide whether the proposal to "dovetail" the two seniority lists would violate the CBAs, in the circumstances __ ___ _____________ posed by the consolidation. See supra at p.5. After determining _____ __ ___ _____________ ___ _____ that the RWF proposal would not violate the CBAs, the arbitrator, again at the explicit invitation of the parties, undertook to 7 determine the appropriate remedy. Since it is indisputable that the language in neither CBA precluded "dovetailing" in the circumstances of a consolidation, the arbitral award directing "dovetailing" clearly derived from a permissible interpretation of the agreement in the changed circumstances, and did not "simply reflect the arbitrator's own notions of industrial jus- tice," id. As the Court carefully noted in Misco, Inc., "it must ___ ___________ be remembered that grievance and arbitration procedures are part and parcel of the ongoing process of collective bargaining. It is through these processes that the supplementary rules of the _____________ plant are established." 484 U.S. at 38 (emphasis added). Thus, viewed against the backdrop of the CBAs and the joint arbitral submission, as well as the surrounding circumstances, see El ___ __ Dorado, 961 F.2d at 320, the challenged award was well within the ______ consensual delegation of arbitral authority, the "no-modifica- tion" clause notwithstanding. See High Concrete Structures, Inc. ___ ______________________________ v. United Elec., Radio and Mach. Workers Local 166, 879 F.2d __________________________________________________ 1215, 1219 (3d Cir. 1989) (holding: "no-modification" clause does not "prohibit the parties from agreeing to a submission which is broader.") III III CONCLUSION CONCLUSION __________ 8 The joint arbitral submission empowered the arbitrator to harmonize the parallel contract provisions in dispute and to fashion a remedy in light of the surrounding circumstances. As the arbitral award faithfully drew its essence from the collec- tive bargaining agreements, it represents neither an arrogation of arbitral power, nor an impermissible modification. The district court judgment must be affirmed. Affirmed. Affirmed. ________ 9