UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 95-2344

BOSTON AND MAINE CORPORATION,

Plaintiff - Appellant,

v.

BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYEES,

Defendant - Appellee.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, U.S. District Judge] 



Before

Torruella, Chief Judge, 

Cummings* and Cyr, Circuit Judges. 



David A. Handzo, with whom Daniel F. Driscoll, Smith, 
Elliott, Smith and Garmey, John H. Broadley, Andrew J. McLaughlin 
and Jenner & Block were on brief for appellant. 
Richard S. Edelman, with whom John O'B. Clarke, Jr., Donald 
F. Griffin, Melissa B. Kirgis and Highsaw, Mahoney & Clarke, P.C. 
were on brief for appellee.



August 30, 1996


 

* Of the Seventh Circuit, sitting by designation.

TORRUELLA, Chief Judge. Plaintiff-Appellant Boston & TORRUELLA, Chief Judge. 

Maine Corporation (the "B&M") challenges the district court's

denial of its motion for summary judgment and concurrent grant of

summary judgment for Defendant-Appellee Brotherhood of

Maintenance of Way Employees (the "BMWE"). The B&M had

challenged the enforcement of certain of Public Law Board 4469's

awards to the BMWE-affiliated claimants. The BMWE sought

enforcement of the same awards, which the district court granted.

We affirm the judgment of the district court.

BACKGROUND BACKGROUND 

In March 1986, the BMWE-member employees exercised

their right to self-help in a dispute with two carriers, the

Maine Central Railroad Company (the "MEC") and the Portland

Terminal (the "PT"). The MEC's and the PT's BMWE-represented

employees asked the employees of the B&M to withhold their labor

from the B&M to assist them in resolving their dispute. In April

1986, the B&M issued notices that jobs left vacant by sympathetic

strikers would be permanently abolished, including the jobs left

vacant by the claimants. On April 19, 1986, the B&M directed the

striking employees to return to work by April 25, 1986, or their

positions would be filled by permanent replacements. The

claimants did not return to work that April.

When the BMWE's strike against the MEC was halted on

May 16, 1986, the claimants attempted to return to work. When

they tried to return to work, they were informed that they were

not entitled to return to work because they had forfeited their

-2-

seniority by not complying with Rule 13 of the collective

bargaining agreement ("the CBA"), which required that

"[e]mployees laid off by reason of force reduction, desiring to

retain their seniority rights, must, within ten (10) days from

[the] date laid off, file their name and address, in writing, in

triplicate, with their immediate supervising officer." The

claimants were not permitted to return to work until sometime

after July 23, 1986, when, by memorandum, the B&M restored their

seniority in compliance with a permanent injunction granted by

the district court in Railway Labor Executives' Ass'n v. Guilford 

Transp. Indus., 639 F. Supp. 1092 (D. Me.), aff'd in part and 

rev'd in part sub nom., Railway Labor Executives' Assoc. v. 

Boston & Me. Corp., 808 F.2d 150, 160 (1st Cir. 1986), cert. 

denied, 484 U.S. 830 (1987). Although this court vacated the 

injunction against The B&M, holding that the dispute involving

the BMWE employees was one pertaining to the interpretation or

application of the CBA and was thus within the exclusive

jurisdiction of the appropriate adjustment boards to resolve.

However, at no time after this court vacated the injunction did

the B&M rescind its July 23, 1986, memorandum restoring the

claimants' seniority.

In accordance with the mandate of this court, the

district court entered an order referring the contractual

disputes concerning the B&M to "the National Railroad Adjustment

Board or Public Law Board, whichever is applicable." As a

result, on February 13, 1989, the BMWE and the B&M entered into

-3-

an agreement to establish a Public Law Board pursuant to Section

3 Second of the Railway Labor Act (the "RLA"), 45 U.S.C. 153

Second, to hear the 175 disputes at issue. In March 1989, the

National Mediation Board (the "NMB") established Public Law Board

4669 to hear the disputes and appointed Edwin H. Benn from the

Board. On May 10, 1993, Referee Benn resigned as the neutral

member of Public Law Board 4669. The BMWE and the B&M partisan

members on the Board agreed to select Elizabeth C. Wesman as the

neutral member to replace Referee Benn, and on August 3, 1993,

she was duly appointed by the NMB.

With Wesman as the neutral member, Public Law Board

4669 heard five cases (Nos. 6, 7, 9, 10 and 11) and subsequently

Wesman issued proposed awards in each of the five cases. Public

Law Board sustained, in part, the claims in Awards 6, 7, 9 and 10

-- with the B&M partisan member dissenting -- finding that the

claimants had been erroneously deprived of their seniority by the

B&M's actions. These four awards ordered the B&M to compensate

the claimants in those cases with

back pay for wages [each claimant] . . .
would have earned, but for the erroneous 
removal of his seniority on May 19,
1986[,] for the interval between that
date and the date of his assumption of
the position to which he was properly
entitled, following restoration of his
seniority on July 23, 1986. [Claimants
are] . . . also entitled to restoration
of any vacation rights [they] . . . may
have lost as a consequence of the
erroneous removal of [their] . . .
seniority.

-4-

The B&M has refused to pay the back pay ordered by the four

awards (Nos. 6, 7, 9, and 10) of Public Law Board 4669. Instead,

the B&M filed a motion for summary judgment with the district

court seeking to have the awards set aside; in response, the BMWE

filed a motion for summary judgment seeking to enforce these

awards. The B&M now appeals the district court's denial of its

motion, as well as the district court's decision to grant the

BMWE's motion. Like the district court before us, we refer to

Award No. 6 only, since it is the lead decision in this matter,

the reasoning of which is incorporated in Awards Nos. 7, 9 and

10.

STANDARD OF REVIEW STANDARD OF REVIEW 

We examine a grant of summary judgment de novo, 

applying the same decisional standards as the district court.

Wyner v. North Am. Specialty Ins. Co., 78 F.3d 752, 754 (1st Cir. 

1996). As such, we must apply the normal standard by which

courts review arbitration decisions pursuant to the RLA. See 

Trial v. Atchison, Topeka & Santa Fe Ry., 896 F.2d 120, 123 (5th 

Cir. 1990).

"Judicial review of an arbitration award is among the

narrowest known in the law." Maine Cent. R. Co. v. Brotherhood 

of Maintenance of Way Employees, 873 F.2d 425, 428 (1st Cir. 

1989). Under the RLA, an award by a Public Law Board can be set

aside only if: (1) the Board failed to comply with the

requirements of the RLA; (2) the Board exceeded its jurisdiction;

or (3) the award was the product of fraud or corruption. 45

-5-

U.S.C. 153 First (q). While the limited scope of judicial

review "is not the equivalent to granting limitless power to the

arbitrator," Georgia-Pacific Corp. v. Local 27, United 

Paperworkers Intern. Co., 864 F.2d 940, 944 (1st Cir. 1989), "as 

a general proposition, an arbitrator's factual findings are not

open to judicial challenge," El Dorado Tech. Servs. v. Uni n 

General de Trabajadores de Puerto Rico, 961 F.2d 317, 320 (1st 

Cir. 1992). Where, as here, issues of fraud or corruption are

not raised, we ask "whether the arbitrators did the job they were

told to do -- not whether they did it well, correctly, or

reasonably, but simply whether they did it." Brotherhood of 

Locomotive Eng'rs v. Atchison, Topeka and Santa Fe Ry. Co., 768 

F.2d 914, 921 (7th Cir. 1985).

DISCUSSION DISCUSSION 

In her revised Award, ultimately adopted by the Board,

Referee Wesman concluded that because the First Circuit, in its

December 22, 1986, decision, reversed the part of the district

court's order that restored the seniority of the affected

employees, but the B&M failed to retract its July 23, 1986,

memorandum restoring such seniority, the issue of whether

claimants were deprived of their seniority was "moot." Public

Law Board No. 4699, Award No. 6, p. 10. The district court

ordered the enforcement of Award No. 6 because it concluded that

"the decision that it is not necessary to interpret the contract

is a decision which is entitled to the same level of deference as

a finding of contractual meaning." Boston & Maine Corp. v. 

-6-

Brotherhood of Maintenance of Way Employees, No. 94-321-P-C, 

slip. op. at 14 (D. Me. 1995). The district court so concluded

because it read the Award as "a legal decision based on factual

determinations" to which "[c]ourts are bound to defer . . .

unless the arbitrator has manifestly disregarded the law." Id. 

at 15. The district court found no such manifest disregard.

On appeal, the B&M contends that, because the RLA

directs that the role of a public law board is to interpret or

apply the provisions of a collective bargaining agreement, and

because the instant parties' agreement did not expand the Board's

jurisdiction beyond that set by the RLA, by failing to interpret

and apply the CBA in making her decision the Board exceeded its

authority. The B&M buttresses this argument by claiming that the

arbitrator's failure to interpret or apply the CBA violated this

court's prior conclusion that the disputes in question required

the interpretation or application of the CBA. See Railway Labor 

Executives' Ass'n v. Boston and Maine Corp., 808 F.2d 150, 159 

(1st Cir. 1986), cert. denied, 484 U.S. 830 (1987).1  

 

1 We also reject the B&M's contention that the district court
made a finding of fact that the arbitrator failed to interpret or
apply the CBA. In review of RLA arbitration, the factual
findings of the arbitral panel are "conclusive" upon the district
court. 45 U.S.C. 153 First(q). Thus, the district court was
not obligated to make findings of fact for the purposes of
Federal Rule of Civil Procedure 52(a), see Makuc v. American 
Honda Motor Co., 835 F.2d 389, 394 (1st Cir. 1987), and indeed, 
the district court properly noted that it lacked jurisdiction to
review the factual findings of the panel, Boston & Maine Corp. v. 
Brotherood of Maintenance of Way Employees, No. 94-321-P-C, slip 
op. at 17 (D. Me. November 9, 1995).

-7-

As an initial matter we reject the contention that our

previous opinion directed that the Board construe the CBA. The

B&M points to a statement in our previous opinion that "[w]hether

a party is in breach of a collective bargaining agreement . . .

'requires the interpretation [and] application'" of that

agreement. Railway Executives' Assoc., 808 F.2d at 159 (quoting 

45 U.S.C. 153, First (1) (RLA)). However, there, we were

responding to the district court's exercise of jurisdiction over

an arbitrable "minor" dispute, which was not first litigated

before an appropriate arbitration board -- as the RLA directs.

See 45 U.S.C. 153, First (providing that arbitration of 

disputes over contract interpretation is compulsory). See, e.g., 

Andrews v. Louisville R.R. Co., 406 U.S. 320, 323 (1972). Our 

statement regarding "interpretation" and "application" of the CBA

is best read as distinguishing the job of an arbitration board

under the RLA from the district court's proper exercise of its

jurisdiction. In that light, our previous language cannot be

construed as limiting the Board to interpreting the contract,

rather than exercising the full authority afforded it by the

parties.

We turn to the question of the proper scope of the

arbitrator's authority. The B&M asks us to adopt the view that

the Board's sole authority was to apply and interpret the

provisions of the CBA that the parties brought before it, and

that by dismissing the issue brought before it as moot, the Board

exceeded that authority. We cannot accept such a restrictive

-8-

reading of the scope of arbitration in this case. We have stated

before that "once an issue has been committed to arbitration,

both the CBA and the submission itself should be taken into

account in determining the scope of the submission." El Dorado 

Tech. Servs., 961 F.2d at 320. In El Dorado Technical Services, 

an employer argued that an arbitrator exceeded the scope of his

authority by taking into account provisions other than the

particular provision under which the union complained. Id. In 

response, we concluded that "[a]n arbitrator's view of the scope

of the issue committed to his [or her] care is entitled to the

same far-reaching respect and deference as is normally accorded

to the arbitrator's interpretation of the collective bargaining

agreement itself." Id. at 321. As a result, we rejected as 

"bordering on the chimerical" the view that an arbitrator could

exceed the scope of his authority by electing to consider the

agreement in question as a whole. Id. We do so again here. 

Similarly, B&M claims that the arbitrator failed to

interpret the CBA in this case, in particular the CBA's Rule 13

governing the retention of seniority rights during furlough. The

Board concluded that because B&M had restored these rights

pursuant to the district court's ruling in 1986, and did not

retract this restoration pursuant to the First Circuit's 1986

reversal, the issue of whether the B&M properly terminated

employees' seniority is "moot." While the instant case differs

from El Dorado Technical Services in that there the arbitrator's 

ruling was challenged on appeal for considering provisions of the

-9-

CBA that were not submitted for arbitration for the parties, we

think that El Dorado Technical Services at the very least directs 

that the Board's decision not to interpret Rule 13 cannot alone

support the conclusion that the Board exceeded the scope of its

authority, despite the fact that the parties' submission focused

on Rule 13. The parties' submission agreement in fact stated

that the "Board shall have jurisdiction only of the claims and

grievances" shown on an attached list containing the claimants'

names that included the Rule 13-related issue of seniority. We

conclude the Board's mootness ruling is a plausible

interpretation of the "claims and grievances" language in the

submission. We defer, per El Dorado, to the Board's conclusion 

that the "claims" consisted of only the question of remedy, since 

the B&M essentially conceded the question of liability. Cf. Pack 

Concrete, Inc. v. Cunningham, 866 F.2d 283, 285-86 (9th Cir. 

1989) (deferring to the arbitrator's ruling that submitted

"seniority and recall" issue also allowed consideration of

propriety of discharge").

What we are left with, then, is the question of whether

an arbitrator's decision that the existing record does not

present a justiciable controversy, in and of itself, oversteps

the arbitrator's authority pursuant to the RLA. We conclude that

the Board cannot seriously be considered to have overstepped its

bounds, where, as here, the arbitrator's decision was grounded in

B&M's allowance via its memorandum -- prior to arbitration -- of

the remedy sought by employees. The Supreme Court has clarified

-10-

that arbitration boards under the RLA are not restricted simply

to the interpretation of the agreement set before them.

Transportation-Communication Emp. Union v. Union Pac. R. Co., 385 

U.S. 157, 165-66 (1966). In fact, the Supreme Court has ordered

arbitration boards "to resolve th[e] entire dispute not only upon

the contract between the railroad and [employees], but 'in light

of . . . [contracts] between the railroad' and any other union

'involved' in the overall dispute, and upon consideration of

'evidence as to usage, practice and custom' pertinent to all

these agreements." Id. (quoting Order of Ry. Conductors v. 

Pitney, 326 U.S. 561, 567 (1946)); see also International Bhd. of 

Teamsters v. Pan Am World Servs., Inc., 675 F. Supp. 1319, 1322 

(M.D. Fla. 1987). In the instant case, the Board's decision was

certainly made in light of the CBA, upon consideration of the

current practice among B&M and the employees involved pertinent

to the CBA. Specifically, because B&M had continue to afford its

employees their "disputed" seniority while being free not to do

so, the Board found moot the issue of whether the complaining

employees could have complied with Rule 13 of the CBA, pursuant

to which they lost their seniority.

It is well settled that a case is moot "when the issues

presented are no longer 'live' or the parties lack a legally

cognizable interest in the outcome," United States Parole Comm'n 

v. Geraghty, 445 U.S. 388, 396 (1980) (quoting Powell v. 

McCormack, 395 U.S. 486, 495-96 (1969)), or alternatively, when 

the "party invoking federal court jurisdiction" no longer has "a

-11-

personal stake in the outcome of the controversy." Geraghty, 445 

U.S. at 397. An exception to the mootness doctrine exists where

it appears that all issues in a case have been resolved, but the

issues are "capable of repetition, yet evading review." Southern 

Pac. Terminal Co. v. ICC, 219 U.S. 498 (1911). One might dispute 

whether the Board was correct as a legal matter in its

determination that the matter in question was moot. However, for

us to assess the merits of that determination would exceed our

own role in reviewing an arbitrator's decision. We are

constrained to ask only whether the Board's members "did the job

they were told to do." Brotherhood of Locomotive Eng'rs, 768 

F.2d at 921. That job was to resolve the dispute "in light of"

the CBA and the relevant practice between the B&M and the

complaining employees. The Board certainly did this job, in a

manner that cannot even be characterized as arbitrary or

capricious -- a standard which would still not be adequately

deferential to the Board's decision. See Loveless v. Eastern 

Airlines, 681 F.2d 1272, 1276 (11th Cir. 1982) (noting that the 

Senate Labor Committee rejected language that would have

permitted courts to vacate arbitral awards under the RLA as

"arbitrary or capricious"). Our inquiry ends there. 

CONCLUSION CONCLUSION 

As a result of the foregoing, the judgment of the

district court is affirmed. affirmed. 

-12-