JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, demandante y peticionaria, *v.* AUTORIDAD DE ENERGÍA ELÉCTRICA, demandada.

*Número:* O-85-68        *Resuelto:* 25 de abril de 1986

*Leticia Rodríguez García,* abogada de la peticionaria; *Myrtelina M. Fernández,* abogada de la recurrida.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El convenio colectivo que regía las relaciones obrero-patronales entre la Autoridad de Energía Eléctrica de Puerto Rico (la Autoridad) y la Unión de Trabajadores de la Industria Eléctrica y Riego de Puerto Rico (la UTIER) para la fecha en que surgió la controversia que hoy resolvemos disponía, en síntesis y en lo pertinente, que durante la vigencia del mismo a la Autoridad le estaba vedada la *subcontratación* de labores o tareas de operación y conservación de la "Unidad apropiada", según ésta se definía en dicho convenio, *excepto* en ciertas y determinadas situaciones, las cuales se enumeraban específicamente en el referido documento. Se disponía, adicionalmente, que de surgir una situación que a juicio de la Autoridad cualificaba como una de las excepciones señaladas, dicha instrumentalidad venía en la obligación de notificar de inmediato al presidente del capítulo local de la UTIER afectado por dicha acción, a los fines de que las partes se reunieran con el propósito de determinar si existían las circunstancias que justificaban la propuesta subcontratación; disponiéndose que de no haber acuerdo al respecto, la Autoridad y la UTIER someterían el asunto a la consideración y discusión de "una tercera persona imparcial designada por el Secretario del Trabajo" de Puerto Rico. Procede destacarse, por último, que el convenio facultaba a la Autoridad para, en casos de "emergencia",[1] proseguir adelante con la subcontratación, luego de lo cual si el árbitro decidía en su contra, ésta venía obli-

---

[1] La situación de emergencia se definía en el convenio como aquellos casos donde estuviera "en peligro inminente la continuidad del servicio o cuando se encuentre interrumpido el mismo"; en otras palabras, en casos en que la Autoridad lo considerara de "urgencia y necesidad para el mejor y más eficiente servicio público". Véanse: Art. IV, Secs. 1(d) y 3 del Convenio Colectivo vigente entre las partes entre julio 1ro de 1980 a junio 30 de 1983.

gada a "compensar" monetariamente a la UTIER de acuerdo a una fórmula predeterminada en el convenio. ([2])

En el presente caso, un funcionario de la Autoridad le notificó al delegado de la UTIER para el área de Guayama-Juana Díaz que la Autoridad se proponía —*como en efecto lo hizo*— subcontratar la reparación de un calentador de combustible de uno de los tanques de la Central de Aguirre. No habiendo conformidad entre las partes respecto a la procedencia de la subcontratación realizada, el asunto le fue sometido a un árbitro adscrito al Negociado de Conciliación y Arbitraje del Departamento del Trabajo.

El "acuerdo de sumisión" suscrito por la Autoridad y la UTIER ante el árbitro designado fue el siguiente:

> Determinar si la Autoridad de Energía Eléctrica de Puerto Rico *violó o no* el Artículo IV del Convenio Colectivo *al subcontratar* las labores de reparación del calentador del tanque de combustible de servicio de la unidad Núm. 2 de Aguirre. De determinarse que lo violó, que el árbitro ordene el remedio adecuado a tenor con la Sección 3 de dicho Artículo. (Énfasis suplido.)

Surge del laudo de arbitraje emitido en el presente caso que una vez se suscribió por las partes el "acuerdo de sumisión" antes reseñado y se admitió en evidencia, por estipulación de las partes, una copia tanto del convenio colectivo vigente como de la carta en que la Autoridad le informó a la UTIER de la subcontratación realizada, el árbitro requirió de la Autoridad que presentara prueba de las razones que a su entender justificaban la referida subcontratación, a lo cual se negó el representante legal de ésta por entender que "el peso de la prueba en ese sentido le correspondía a la Unión", ya que ésta era "la parte promovente". Declarado sin lugar el plan-

---

([2]) Esta penalidad consistía en el pago de una suma de dinero igual a un quince (15) por ciento del costo de mano de obra en que incurriera el subcontratista en la labor realizada, que para efectos del cómputo se fijaba en un cincuenta (50) por ciento del costo total de la obra subcontratada.

teamiento por el árbitro, la Autoridad se reiteró en su negativa de presentar prueba en dos ocasiones adicionales. El árbitro procedió entonces a "adjudicar la querella a favor de la Unión . . . ordenándole a la Autoridad cumplir con la obligación remedial" estipulada en el convenio colectivo, esto es, compensar monetariamente a la UTIER por la subcontratación realizada.

No habiendo acatado la Autoridad el laudo de arbitraje emitido, la Junta de Relaciones del Trabajo de Puerto Rico acudió ante este Tribunal en solicitud para que se pusiera en vigor el mismo. Le concedimos término a la Autoridad de Energía Eléctrica de Puerto Rico para que mostrara causa por la cual ello no debía así ordenarse. Ha comparecido. Plantea, en primer lugar, que el laudo emitido viola el debido procedimiento de ley por cuanto el peso de la prueba, de acuerdo a lo dispuesto por la Regla 10 de las Reglas de Evidencia de 1979, le correspondía a la parte que sostenía la afirmativa en la cuestión en controversia, esto es, a la UTIER. En segundo lugar, y como corolario de lo anterior, aduce que el árbitro actuó "sin jurisdicción" al resolver la querella por cuanto "encontró a la Autoridad incursa en una violación de convenio sin que la Unión hubiese presentado prueba alguna para demostrar" la alegada violación del convenio. No le asiste la razón. Veamos por qué.

I

El presente caso nos permite evaluar la corrección jurídica de la práctica de que en una vista de arbitraje se le imponga al patrono el peso de demostrar la procedencia o no de la subcontratación de labores bajo un convenio colectivo que contiene una cláusula que prohíbe, como regla general, la referida subcontratación.

La materia de "subcontratación" ha sido un tema difícil y escabroso en la esfera de las relaciones obrero-patronales a lo largo de las últimas décadas. El mismo ha sido foco de in-

creíble fricción entre los patronos y las uniones obreras que representan a los trabajadores de éstos, aun entre partes que negocian de buena fe. De un lado la prerrogativa del patrono, como dueño y responsable de la operación, a efectuar ciertos y determinados trabajos que entiende que sus empleados no están capacitados para realizar, o que de éstos poder realizar, conlleva la adquisición de equipo costoso, lo que no se justifica dada la poca frecuencia con que se realiza el mismo. Del otro lado el temor por parte de la Unión de lo que la subcontratación significa para los trabajadores que representa: un *menor número de oportunidades de empleo dentro de la empresa en particular para la que trabajan.*

■ Consciente de lo anteriormente señalado nuestra Asamblea Legislativa —enfatizando la importancia del proceso de negociación colectiva en nuestra filosofía laboral, y expresando que se "requiere que se lleven a la mesa de negociación las materias que son causa de las disputas obrero-patronales" y que la "utilización de la subcontratación como mecanismo para evitar el cumplimiento de aquellos deberes y obligaciones que las leyes y los convenios colectivos le imponen a los patronos, menoscaba el principio mismo de que la paz industrial se debe lograr a través de la negociación colectiva, y por ende resulta contraria a la política pública establecida por la Asamblea Legislativa en materia de relaciones obrero-patronales"— aprobó la Ley Núm. 68 de 22 de junio de 1965. [3] Mediante la misma se enmendó el Art. 8, inciso (d), de la Ley de Relaciones del Trabajo de Puerto Rico, disponiéndose que a "los fines de la negociación colectiva, la subcontratación se considerará materia mandatoria de negociación". [4] Esto implica que la materia de subcontratación que-

[3] Véase Exposición de Motivos de la citada Ley.

[4] Luego de la enmienda realizada, el citado Art. 8(d) de la Ley de Relaciones del Trabajo de Puerto Rico —Ley Núm. 130 de 8 de mayo de 1945— lee como sigue:

dará debidamente reglamentada —de acuerdo a las cláusulas y condiciones que las partes tengan a bien estipular en su caso en particular— en todo convenio colectivo que un patrono y una organización obrera finalmente suscriban en nuestra jurisdicción. Ello ha resultado en que controversias como la que se plantea en el presente recurso se susciten una y otra vez en la esfera laboral.

■ Con ese trasfondo en mente, abordamos la solución de la cuestión aquí en controversia. Somos del criterio que la posición asumida por el árbitro en el presente caso es una fundamentalmente correcta. Debe mantenerse presente que en esta clase de casos —al igual que en casos de acciones disciplinarias— es el patrono el que, de ordinario, está en control y en posesión de toda la información necesaria para que la cuestión pueda ser resuelta de una o la otra forma. Dicho de otra manera, y en cuanto a la situación en específico a la que nos enfrentamos, el peso de la prueba en esta clase de situaciones debe recaer sobre el patrono por cuanto es éste quien conoce con todos sus detalles y especificaciones la labor o trabajo que desea realizar y subcontratar por lo que es la parte que está en posición óptima para demostrar si en su negocio existe el personal y equipo adecuado para realizar el trabajo y si el mismo es viable desde el punto de vista económico. Debemos recordar, en adición, que ante una regla general compete a la parte que invoca la excepción demostrar su existencia. Por consiguiente, es el patrono la parte que debe venir "obligada" a presentar evidencia sobre si procede o no

"Art. 8.—Qúe son Prácticas Ilícitas de Trabajo.—(1) Será práctica ilícita de trabajo el que un patrono, actuando individualmente o concertadamente con otros:

.    .    .    .    .    .    .    .

"(d) Rehúse negociar colectivamente con el representante de una mayoría de sus empleados en una unidad apropiada de negociación colectiva, sujeto a las disposiciones del Art. 5. A los fines de la negociación colectiva, la subcontratación se considerará materia mandatoria de negociación."

la subcontratación de acuerdo a lo pactado en el convenio colectivo. A esos efectos, véanse: R. H. Gorske, *Burden of Proof in Grievance Arbitration*, 43 Marquette L. Rev. 137, 145–149 (1959) ; N. Dennis, *Labor Arbitration Law and Practice*, St. Paul, Minn., West Pub. Co., 1979, pág. 133; *cf. Celotex Corp.*, 24 Lab. Arb. (BNA) 369 (1955) ; *Bethlehem Steel Co., Inc.*, 11 Lab. Arb. (BNA) 544 (1948) ; *City of Hamtranck*, 71 Lab. Arb. (BNA) 822 (1978) ; *Rebel Coal Co., Inc.*, 79 Lab. Arb. (BNA) 535 (1982). Somos de la opinión que imponerle a la Unión, bajo esas circunstancias, el peso de la prueba significaría colocarla en un completo estado de indefensión, lo cual, no sólo milita contra los más elementales principios de justicia sino que atenta contra el espíritu y propósito de la citada Ley Núm. 68 de 22 de junio de 1965.

En cuanto al planteamiento de la recurrida relativo a que dicha determinación viola el "debido procedimiento de ley", basta señalar que el Tribunal Supremo de Estados Unidos ha resuelto que el requisito fundamental de debido proceso es la concesión de la oportunidad de ser oído, *Grannis* v. *Ordean*, 234 U.S. 385, 394 (1913) ; *Mullane* v. *Central Hanover Tr. Co.*, 339 U.S. 306, 314 (1949). Este Tribunal ha resuelto que "[e]l debido procedimiento de ley requiere que se *notifique adecuadamente* al demandado la reclamación que haya en su contra y que, además, *se le brinde la oportunidad de ser oído*". (Énfasis suplido.) *Ind. Siderúrgica* v. *Thyssen Steel Caribbean*, 114 D.P.R. 548, 559 (1983). De manera pues, que todo lo que se requiere en situaciones como la presente es que se le dé notificación a la parte y se le conceda la oportunidad a ésta de presentar la prueba que entienda debe aducir en apoyo de su posición. (5)

---

(5)Estamos conscientes de que el *locus* del peso de la prueba puede ser dispositivo de un caso, como lo ha sido en éste. Sin embargo, está resuelto que, fuera del área criminal, el *locus* del peso de la prueba no es propiamente un problema de debido proceso, *Lavine* v. *Milne*, 424 U.S. 577, 585 (1976).

Por los fundamentos antes expresados, resolvemos que en un caso donde el convenio colectivo suscrito por las partes contiene una cláusula que prohíbe al patrono la subcontratación de trabajo salvo en ciertas y determinadas circunstancias, una vez que la Unión demuestra que el convenio colectivo así lo establece y que el patrono ha realizado la subcontratación impugnada o se propone llevarla a cabo, le corresponde al patrono demostrar que la subcontratación en controversia no constituye una violación de dicho convenio por cuanto cae bajo una de las excepciones establecidas en el mismo.

## II

En la vista de arbitraje que se señalara en el presente caso se presentó en evidencia, por estipulación de las partes, copia del convenio colectivo suscrito por ellos. Dicho convenio, como hemos visto, contenía una cláusula que le prohibía a la Autoridad el "subcontratar labores o tareas de operación y conservación de la Unidad Apropiada" excepto en ciertas y determinadas situaciones. Según el "acuerdo de sumisión" que suscribieran las partes ante el árbitro éste venía en la obligación de "determinar si la Autoridad de Energía Eléctrica de Puerto Rico *violó o no* el Art. IV del convenio colectivo *al subcontratar* las labores de reparación del calentador del tanque de combustible". (Énfasis suplido.) En otras palabras, las partes estipularon el hecho de que efectivamente la Autoridad había "subcontratado labores o tareas de operación y conservación de la Unidad Apropiada".

Ante la admisión en evidencia de copia del convenio colectivo y de la estipulación del hecho de la subcontratación llevada a cabo por la Autoridad, la UTIER quedó relevada de la responsabilidad que como "parte promovente" tenía de presentar prueba en el procedimiento. ([6]) Le correspondía entonces,

---

([6]) Ello, naturalmente, dispone del planteamiento de la Autoridad a los efectos de que el árbitro resolvió la cuestión en ausencia total de prueba.

como correctamente resolvió el árbitro, el peso de la prueba a la Autoridad para demostrar la corrección de su acción a la luz de lo dispuesto por el convenio colectivo. No lo hizo. Debe responder por las consecuencias de así no haberlo realizado. [7]

No adoleciendo el laudo de arbitraje emitido de ninguna de las causas de nulidad que reconoce nuestra jurisprudencia, [8] *J.R.T.* v. *Aut. de Comunicaciones*, 110 D.P.R. 879 (1981); *J.R.T.* v. *Otis Elevator Co.*, 105 D.P.R. 195 (1976) y *Colón Molinary* v. *A.A.A.*, 103 D.P.R. 143 (1974), *procede declarar con lugar la petición de la Junta de Relaciones del Trabajo de Puerto Rico para que se ponga en vigor el laudo de arbitraje emitido. Se dictará sentencia de conformidad.*

El Juez Presidente Señor Pons Núñez no intervino.

---

[7] El caso de autos representa la segunda ocasión en que el árbitro F. Hernández Benítez dictamina que el peso de la prueba le corresponde a la Autoridad de Energía Eléctrica de P.R. en casos en que está en controversia la cláusula del convenio sobre subcontratación. Véase AEE y UTIER, NCA, A-853, págs. 5–6.

[8] Las cuales son: fraude, conducta impropia, violaciones al debido procedimiento, falta de jurisdicción, y que el laudo emitido no resuelva todas las cuestiones planteadas o que violente la política pública.