# United States Court of Appeals
## For the First Circuit

No. 01-1345

NEW ENGLAND HEALTH CARE EMPLOYEES UNION,
DISTRICT 1199, SEIU, AFL-CIO,

Plaintiff, Appellant,

v.

RHODE ISLAND LEGAL SERVICES,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

Before

Lipez, Circuit Judge,
Coffin, Senior Circuit Judge,
and Barbadoro,* District Judge.

Mark B. Gursky, with whom Gursky Law Associates was on brief, for appellant.
Robert P. Brooks, with whom Michael D. Chittick and Adler Pollock & Sheehan P.C. were on brief, for appellee.

*Of the District of New Hampshire, sitting by designation.

December 10, 2001

**COFFIN, <u>Senior Circuit Judge</u>.** This case is the antithesis of our typical decisions addressing the limits of an arbitrator's discretion. While most parties challenge an arbitrator's finding that they are required to arbitrate a claim, appellant here contests, on public policy grounds, a finding that recourse is available only in administrative and judicial tribunals. Finding no contrary public policy, we affirm the district court's grant of summary judgment.

## I. <u>Background</u>

The parties have stipulated to the relevant facts. Appellant New England Health Care Employees Union, District 1199, SEIU, AFL-CIO ("the Union") and appellee Rhode Island Legal Services ("RILS") are parties to a collective bargaining agreement ("the CBA"). Among the CBA's many provisions is Article 20.3(f), which provides that "RILS shall not be required to arbitrate any dispute which is pending before any administrative or judicial agency."

On April 5, 1999, RILS terminated a Union member. That same day, the Union filed a grievance on the employee's behalf, pursuant to the CBA. Four months later, the employee filed discrimination complaints with the Rhode Island Commission on

Human Rights and the Equal Employment Opportunity Commission alleging that RILS terminated her because she is physically disabled. The Union's grievance proceeded to arbitration, and the arbitrator found it was substantively non-arbitrable under Article 20.3(f) because the employee's administrative complaints were still pending. After appellant petitioned the district court to vacate the arbitrator's award, the district court upheld the award and granted summary judgment in appellee's favor.

## II. <u>Standard of Review</u>

We review the district court's legal determinations de novo, applying the same well-established standard for evaluating an arbitrator's decision:

> [C]ourts will set aside the arbitrator's interpretation of what [the CBA] means only in rare instances. Of course, an arbitrator's award must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as an honest arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision.

<u>Eastern Assoc. Coal Corp.</u> v. <u>United Mine Workers of America</u>, 531 U.S. 57, 62 (2000) (internal quotations and citations omitted). A challenge to an arbitrator's interpretation of an agreement can be successful only if the losing party shows that the award is "(1) unfounded in reason and fact; (2) based on reasoning so

palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or, (3) mistakenly based on a crucial assumption that is concededly a non-fact." Teamsters Local Union No. 42 v. Supervalu, 212 F.3d 59, 66 (1st Cir. 2000). With this exceedingly strict standard of review as a backdrop, we turn to the substance of the argument.

III.  Discussion

A.  Public Policy

Unable to conjure up any sustainable argument that the arbitrator unfaithfully applied the language of the CBA, appellant seeks vindication by arguing that the arbitrator's award applying Article 20.3(f) violates the long-standing public policy that favors arbitration to resolve contractual employment disputes.  Cf. Paperworkers v. Misco, Inc., 484 U.S. 29, 42 (1987) (allowing a court to refuse to enforce an arbitration award if the underlying collective bargaining agreement is contrary to an explicit, well-defined, and dominant public policy).  Paperworkers instructs us that the public policy must be "ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests."  484 U.S. at 43 (internal quotations marks and citations omitted).  If enforcement of the arbitration award would violate the overriding public policy, it should not be enforced.  Id.

Appellant emphasizes that the Supreme Court has celebrated arbitration, noting that it provides the benefits of speed, simplicity, and informality in otherwise acrimonious situations.  See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985).  Congress also has embraced the

-5-

notion, enacting the Federal Arbitration Act to encourage resolution of various claims by arbitration. See 9 U.S.C. § 1. Thus, appellant argues, both statutory and case law firmly establish the public policy in favor of resolving claims through arbitration, and the arbitrator violated that policy by refusing to allow the Union to arbitrate its grievance.

Appellant's argument is fatally flawed. Although arbitration is considered desirable, it is "a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960). Therefore, even assuming that public policy favors arbitration, we may not supplant the parties' arms-length agreement and require RILS to submit to arbitration here.[1] Finding no explicit, well-defined and dominant public

---

[1] Appellant also contends that Article 20.3(f) is invalid under Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974), in which the Court held that an employee's right to pursue a Title VII claim was not waived by his prior submission of his claim to arbitration. Appellant claims the obverse, that the contractual right cannot be waived by invocation of the statutory right. The flaw in this, of course, is that unlike the statutory right which exists to pursue discrimination claims, the contract (and Article 20.3(f) in particular) expressly indicate that the parties never agreed to provide appellant with the contractual right to arbitrate a claim pending before an administrative agency.

policy to require a party to arbitrate claims it has agreed not to arbitrate, our inquiry comes to an end.[2]

B.   Retaliation

Appellant also argues that the arbitrator's award amounts to  retaliation in violation of the anti-retaliation provisions of the Americans with Disabilities Act, 42 U.S.C. § 12203(a), and the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28-5-7(5), because the filing of the discrimination claim by the employee, a protected activity, triggered barring the Union from arbitration.

This argument requires little discussion.  We agree with the district court that appellant's argument "presupposes that [the

---

[2]     Appellant also claims that Article 20.3(f) itself violates public policy and cannot be enforced, contending that it permits retaliatory actions by RILS to the detriment of individual employees.  Even if RILS's decision to invoke Article 20.3(f) may somehow be deemed retaliatory, the critical point is that Article 20.3(f) cannot be triggered unless both the employee and the Union seek redress in different fora. Whatever public policy there is in preserving an untrammeled right to arbitration, it is absolutely outweighed by (1) the Union's express agreement to waive arbitration in these precise circumstances; (2) the narrow set of circumstances in which this situation can be presented (i.e., only when both the employee and the union file separate claims); (3) RILS's logical preference to minimize resources by not being forced to litigate in separate fora; and (4) the possibility of otherwise inconsistent outcomes in the arbitral and administrative realms.
We likewise reject appellant's challenge to Article 20.3(f) as overly broad and vague.  The record does not indicate that appellant made these arguments before the district court, and they are therefore waived on appeal. Corrada Betances v. Sea-Land Serv., Inc., 248 F.3d 40, 44 (1st Cir. 2001).

employee] had a right to arbitrate her grievance." Furthermore, applying the familiar McDonnell Douglas burden shifting scheme, appellant cannot make its prima facie case that the employee suffered an adverse employment action in retaliation for engaging in a protected activity because she was terminated before she filed her discrimination claims. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); White v. New Hampshire Dep't of Commerce, 221 F.3d 254, 264 (1st Cir. 2000). Moreover, appellant claims that the arbitrator (as opposed to the employer) retaliated against the employee. Assuming arguendo that a third party can be liable for retaliation, it is undisputed that the arbitrator relied only on the plain language of the CBA to determine that the Union's grievance was substantively non-arbitrable. The arbitrator's decision thus was based on a legitimate non-discriminatory reason that appellant has not even attempted to show was pretextual. Accordingly, there is no merit to appellant's retaliation claim.

**Affirmed.**