UNION DE PERIODISTAS DE ARTES GRAFICAS y RAMAS ANEXAS, UPAGRA, Plaintiff,

v.

TELEMUNDO DE PUERTO RICO, INC., Defendant.

Civil No. 12–1629 (FAB).

United States District Court, D. Puerto Rico.

March 1, 2013.

Miguel Simonet–Sierra, Simonet Sierra Law Office, Guaynabo, PR, for Plaintiff.

Jorge C. Pizarro–Garcia, Jimenez, Graffam & Lausell, Miguel Amid Nieves–Mojica, San Juan, PR, for Defendant.

## OPINION AND ORDER

BESOSA, District Judge.

Before the Court is the motion for a hearing filed by plaintiff Union de Periodistas de Artes Graficas y Ramas Anexas ("UPAGRA"), (Docket No. 9), and defendant Telemundo de Puerto Rico, Inc. ("Telemundo")'s response, (Docket No. 11.) Also before the Court are defendant Telemundo's two briefs in support of confirming an arbitration award of June 8, 2012, (Docket Nos. 14 & 24), as well as the opposition brief filed by plaintiff UPAGRA, (Docket No. 20). For the reasons discussed below, the Court **AFFIRMS** the arbitration award and **DENIES** plaintiff UPAGRA's motion for a hearing.

## I. Background

### A. Factual History

The Court derives the following undisputed facts from the arbitration award, which is incorporated into plaintiff UPAGRA's petition for review. *See JCI Commc'ns., Inc. v. IBEW, Local 103*, 324 F.3d 42, 45 (1st Cir.2003) (noting a court may only consider the award and record before the arbitrator in reviewing an arbitration decision).

A collective bargaining agreement ("CBA") governs the labor relations between defendant Telemundo and plaintiff UPAGRA. On February 5, 2009, defendant Telemundo's Director of Human Resources gave written notice to plaintiff

UPAGRA's Secretary General that, as a result of a restructuring plan the company planned to carry out, employees from the "Appropriate Unit" would be laid off. (Docket No. 12–1 at p. 36.) The written notice stated, "[T]he reason for this letter is to notify you that as of February 6, 2009, the company will be obligated to make changes in the organization by reasons of the introduction of new technology, economic efficiencies and reasons authorized by the applicable legislation." *Id.* On February 6, 2009, defendant Telemundo notified the layoff to the "master control" and programming editors affected by the reduction in personnel. *Id.* at p. 37. The parties then met regarding the announced layoffs, as established in Article XL of the CBA, and the layoffs were made effective March 15, 2009. *Id.*

As a result of the television digitalization, Telemundo Network[1] decided to move its "master control" and programming editing work to Miami. Prior to the move, the work was performed in Puerto Rico. *Id.* The restructuring required that the Telemundo Network's subsidiaries' master control areas, including those of Puerto Rico, change from being manually operated—by an employee twenty-four hours a day, seven days a week—to an automated system. *Id.* at p. 37. The change to an automated system consolidated and reduced the master control areas to three hubs. For example, the master control areas originally located in Houston, San Antonio, and Puerto Rico were centralized in a hub in Miami, Florida, and master control personnel in Miami now operate the automated system full-time for those three stations. *Id.*

The automated system also eliminated many of the manual functions the master

---

1. Defendant Telemundo is a corporation registered under the laws of the Commonwealth of Puerto Rico, and is also a subsidiary of

Telemundo Network, which operates sixteen subsidiary stations, including the local station. (Docket No. 12–1 at p. 36.)

control technicians in Puerto Rico used prior to the change in technology. *Id.* at p. 37. Subsequent to the automation, an employee in the Traffic Department in Puerto Rico inserts a "station log" into a master control computer, which then automatically executes the commands. *Id.* Currently, one master control employee in the Miami hub ensures that the automated system functions appropriately. *Id.* Prior to the change, however, eight full-time employees and one part-time employee worked in the master control area of Telemundo. After the restructuring, Telemundo did not hire anyone to perform the master control functions. *Id.*

As a result of the restructuring, reductions to the programming editors at defendant Telemundo also occurred. *Id.* at p. 38. Because a single editing process was implemented for all subsidiaries, the restructuring eliminated the local subsidiary's opportunity to re-edit the network's programming. *Id.* For example, program editors' work on soap operas and films, which was originally completed to attune the shows to the exclusive needs of the local market, ceased to be done in Puerto Rico. *Id.* Rather than purchasing programs and editing them in Puerto Rico, Telemundo now depends on the programming that the main Network has acquired and edited. *Id.* Subsequent to the restructuring, certain laid-off personnel have been hired temporarily to perform editing work. *Id.*

## B. Arbitration Award

On November 9, 2009, July 2, 2010, and October 19, 2010, the parties attended arbitration hearings at the Conciliation and Arbitration Bureau of the Puerto Rico Department of Labor and Human Resources. (Docket No. 12–1 at p. 30.) Prior to arbitration, the parties were unable to reach an agreement on the issue(s) to be resolved by the arbitrator and submitted their respective proposed submission agreements.[2] *Id.* at p. 31. The arbitrator then decided the precise issue to be resolved:

> "To determine, in the first instance, whether the complaint is substantively arbitrable or not. If not, dismiss the complaint. If arbitrable, to evaluate, based on the evidence, the CBA and the current regulations, whether or not Telemundo de Puerto Rico breached the CBA by dismissing the employees who worked in the 'Master Control' Department and the programming editors. In case of an affirmative finding, provide the adequate remedy. In case of a negative finding, to dismiss the Union's complaint."

*Id.* at p. 32.

At arbitration, defendant Telemundo argued that "it did not breach the CBA between the parties by laying off person-

---

**2.** Defendant Telemundo's proposed submission agreement requested that the arbitrator "determine whether or not the complaint is substantively arbitrable.... If the complaint is found to be arbitrable, the Honorable Arbitrator should determine, in light of the applicable CBA and the evidence presented, whether or not Telemundo de Puerto Rico breached the CBA by dismissing personnel in the classifications of Master Control Technician and programming editors in Puerto Rico, as a result of the introduction of new technology, economic efficiencies and/or the centrali-

zation of operations in Miami, by Telemundo Network, Inc." (Docket No. 12–1 at pp. 31–32.)

Plaintiff UPAGRA's proposed submission agreement argued that the arbitrator "should determine whether or not [defendant Telemundo] breached the CBA by dismissing '[m]aster [c]ontrol' and programming employees, as a result of the use of personnel from [sic] without the Appropriate Unit to perform the work of said classifications, which are regularly performed by employees of the Appropriate Unit." (Docket No. 12–1 at p. 32.)

nel in the classifications of 'master control' technician and programming editors as a result of a restructuring brought about by a change in technology, which resulted in savings." (Docket No. 12–1 at p. 38.) In contrast, UPAGRA alleged that "Telemundo de Puerto Rico breached the CBA by unjustifiably laying-off personnel of the appropriate 'master control' unit and programming editors and using personnel from outside of the appropriate unit (subcontracting employees) to perform the work they did on a regular basis." *Id.*

Ultimately, the arbitrator found that defendant Telemundo "reserved the right to administer and manage its business, including the operations and the work methods to be implemented and used to those ends." (Docket No. 12–1 at p. 40.) She determined that UPAGRA "recognized" defendant Telemundo's right to introduce new technology in accordance with the obligations set forth under the CBA: "the [CBA] establishes in Article [X]L [3] that [defendant Telemundo] may reduce personnel and work hours by reason of econo-

my, by reason of introducing new technology or for any other reason, as long as the reasons are justified and reasonable." *Id.* at p. 41. The arbitrator concluded that the layoff process regarding the master control employees and programming editors "adhered to the contractual principles binding the parties, as those have been mentioned." *Id.* "The change of technology and the restructuring permitted [defendant] Telemundo to eliminate the classification of 'master control' technician, as well as that of programming editor." *Id.* This was because the automated system "caused the functions of the 'master control' technician to be reduced so that it didn't justify having them twenty-four hours, seven days a week[,] and the transfer of the residual tasks to a centralized system in a 'hub' ... performed the work ... without the need to have employees locally to those ends." *Id.*

The arbitrator also found that plaintiff UPAGRA did not support its principal allegation that defendant Telemundo breached the CBA by subcontracting personnel

---

**3.** The arbitrator relies on the language of Article "XL" to reach her conclusion, but she appears to have mistakenly cited to Article "KL" throughout her award. No Article KL exists in the version of the CBA printed in the arbitration award. Article XL provides, in pertinent part, "[Defendant Telemundo] shall not dismiss, or discipline regular employees, except for just and reasonable cause.... [It] may reduce personnel and work hours by reason of economics, by reason of introducing new technology or by any other reason, as long as the reasons are justified and reasonable; in which case the layoff or the reduction of work hours shall be conducted by inverted seniority in the work classification of the affected department in the following order: (a) Temporary employees; (b) Probationary employees; (c) Regular part-time employees in the affected department; (d) Regular full-time employees in the affected department.... [Defendant Telemundo] shall give [plaintiff UPAGRA], the general delegate and the affected employees, written notice of any

layoffs or reduction of work hours ... specifying the name, classification, type of hourly wages, the employees' seniority date, the number of employees affected and the reason for the layoff, or reduction of work hours, not less than thirty-five (35) calendar days prior to the date of said layoff, or reduction of work hours, except when by mutual agreement the parties decide to change such period.... Within seven (7) calendar days following the notice, [plaintiff UPAGRA] and [defendant Telemundo] shall meet for the purpose of discussing the effect on the employees of the Appropriate Unit and seek viable alternatives, if any, that could avoid or minimize [defendant Telemundo's] action.... [Plaintiff UPAGRA] recognizes [defendant Telemundo's] right to introduce new technology. [Defendant Telemundo] shall exercise said right complying with the obligations provided in this Agreement and affecting the least possible number of employees of the Appropriate Unit." (Docket No. 12–1 at pp. 34–35.)

from outside the Appropriate Unit to perform residual functions that survived the automation and restructuring. (Docket No. 12–1 at p. 41.) She noted that plaintiff UPAGRA simply "did not present evidence that such was the case," *id.*, and thus "didn't prove that it was so." *Id.* at p. 42. "[Plaintiff UPAGRA] did not present any evidence to refute the testimony that the residual tasks performed in the Miami 'hub' were carried out by additional personnel hired to those effects or that any personnel was hired in Puerto Rico to those ends. Likewise, in the case of the programming editors, [plaintiff UPAGRA] didn't present evidence that any personnel had been hired to continue the functions performed by the members of the Appropriate Unit that were laid off." *Id.*

Consulting a treatise, the arbitrator indicated that "[b]arring restrictive contractual language, a job may be eliminated when most of the tasks previously fulfilled by this position 'have been reduced to the point where the remaining tasks can be performed logically, efficiently and safely by other employees.'" *Id.* (quoting Edna & Frank Elkouri, *How Arbitration Works,* Sixth Edition, BNA, 2003, pp. 664–65 & 713). She was persuaded by the treatise's indication that any plant operation's management "has a fixed obligation to see that unnecessary costs are dispensed with and that production programs are changed to meet changing production demands. This is an inherent right." (Docket No. 12–1 at p. 42) (citing Elkouri, *How Arbitration Works*). Thus, the arbitrator concluded that "according to the evidence presented during the hearings to attend the instant case, [defendant Telemundo] did not breach the CBA by implementing the questioned layoffs." *Id.* at p. 43. Finding that "the complaint is substantively arbitrable[,] [and] Telemundo de Puerto Rico did not breach the CBA by laying off the employees who worked in the 'master con-

trol' department and the programming editors," the arbitrator's award dismissed plaintiff UPAGRA's complaint. *Id.*

## C. Procedural History

On August 21, 2012, plaintiff UPAGRA filed a motion for a hearing to "help in scheduling the management of the case." (Docket No. 9 at p. 1.) The next day, defendant Telemundo filed a motion in response, indicating that it "has no objection to the scheduling conference requested by UPAGRA." (Docket No. 11 at p. 1.) Because this case is a petition to review an arbitration award, however, defendant Telemundo requested that the Court address the case through a "narrow reviewing proceeding" and allow the parties to submit briefs regarding whether the arbitration award should be vacated or affirmed. *Id.* at p. 2. Defendant Telemundo filed a brief in support of confirmation of the arbitration award on November 26, 2012, (Docket No. 14); plaintiff UPAGRA opposed defendant Telemundo's brief on December 31, 2012, (Docket No. 20); and defendant Telemundo replied on January 16, 2013, (Docket No. 24).

## II. Standard of Review of an Arbitration Award

 It is well-established that a federal court's review of an arbitrator's decision is extraordinarily deferential. *See Keebler Co. v. Truck Drivers, Local 170,* 247 F.3d 8, 10 (1st Cir.2001); *Wheelabrator Envirotech v. Mass. Laborers Dist. Council Local 1144,* 88 F.3d 40, 43 (1st Cir.1996); *Serv. Emps. Int'l. Union v. Local 1199 N.E.,* 70 F.3d 647, 651 (1st Cir. 1995); *Dorado Beach Hotel Corp. v. Union de Trabajadores de la Industria Gastronomica de P.R.,* 811 F.Supp. 41, 44 (D.P.R. 1993). "Judicial review of an arbitration award is among the narrowest known in the law." *Me. Cent. R.R. Co. v. Bd. of*

*Maint. of Way Emps.*, 873 F.2d 425, 428 (1st Cir.1989). A reviewing court generally does not hear claims of legal or factual error the way an appellate court reviews a lower court's decisions. *United Paperworkers v. Misco*, 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); *Wheelabrator*, 88 F.3d at 43. Judicial review of an arbitrator's decision requires the court to consider both the CBA and the arbitral submission. *Larocque v. R.W.F., Inc.*, 8 F.3d 95, 96 (1st Cir.1993); *El Dorado Technical Servs., Inc. v. Union General De Trabajadores de P.R.*, 961 F.2d 317, 320 (1st Cir.1992).

■ A court should uphold the arbitrator's interpretation of the CBA if it is within the four corners of the agreement and there is any plausible basis for that interpretation. *Wheelabrator*, 88 F.3d at 44; *Dorado Beach Hotel Corp.*, 811 F.Supp. at 43. A court may not overrule an arbitrator's decision merely because its interpretation of the CBA is different from the arbitrator's. *United Steelworkers of Am. v. Enter. Wheel and Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Bos. Med. Ctr. v. Serv. Emps. Int'l Union*, 260 F.3d 16, 21 n. 4 (1st Cir.2001); *Labor Relations Div. of Constr. Indus. v. Int'l. Bd. of Teamsters*, 29 F.3d 742, 745 (1st Cir.1994); *Dorado Beach Hotel Corp. v. Union de Trabajadores de la Industria Gastronómica de P.R.*, 959 F.2d 2, 4 (1st Cir.1992). If the arbitrator is "even arguably construing or applying the contract and acting within the scope of his [or her] authority," a court may not overturn the decision, even though the court may be convinced that the arbitrator committed a serious error. *Misco*, 484 U.S. at 38, 108 S.Ct. at 371; *Providence Journal v. Providence Newspaper Guild*, 271 F.3d 16, 20 (1st Cir.2001); *Labor Relations Div. of Constr. Indus.*, 29 F.3d at 745. If a reviewing court had the final say on the merits of an arbitrator's award, the federal policy of settling labor disputes by arbitration would be undermined. *United Steelworkers*, 363 U.S. at 596, 80 S.Ct. 1358; *Posadas de P.R. Assocs., Inc. v. Asociación de Empleados de Casino de P.R.*, 821 F.2d 60, 61 (1st Cir.1987); *Dorado Beach Hotel Corp.*, 811 F.Supp. at 44.

■ An arbitrator's decision, however, is not entitled to *carte blanche* approval. *Larocque*, 8 F.3d at 96–97; *Dorado Beach Hotel Corp.*, 811 F.Supp. at 44. The arbitrator may not ignore the CBA's plain language. *Misco*, 484 U.S. at 38, 108 S.Ct. 364. Only in a few exceptional circumstances is a court entitled to vacate an arbitration award. A court may intervene when the party challenging the award establishes that the award was (1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact. *New England Health Care Emps. Union v. R.I. Legal Serv.*, 273 F.3d 425, 427 (1st Cir.2001) (quoting *Teamsters Local Union No. 42 v. Supervalu*, 212 F.3d 59, 66 (1st Cir.2000)); *Wheelabrator*, 88 F.3d at 43–44. The award "must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." *E. Associated Coal Corp. v. United Mine Workers*, 531 U.S. 57, 62, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000) (quoting *Misco*, 484 U.S. at 38, 108 S.Ct. at 371); *Larocque*, 8 F.3d at 97; *Challenger Caribbean Corp. v. Union General de Trabajadores de Puerto Rico*, 903 F.2d 857, 861 (1st Cir.1990). The court must refuse to overturn an award unless the arbitrator acted in a manner for which neither side could have bargained for. *Wheelabrator*, 88 F.3d at 44; *Federacion Central de Trabajadores v.*

*Vaqueria Tres Monjitas, Inc.,* 194 F.Supp.2d 61, 64–66 (D.P.R.2002).

## III. DISCUSSION

Plaintiff UPAGRA argues that the arbitrator correctly concluded that the complaint was substantively arbitrable, but "erred in resolving that [defendant Telemundo] did not breach the [CBA] by unreasonably and without just cause laying off the employees that used to work in the [m]aster [c]ontrol [d]epartment and the programming editors." (Docket No. 12–1 at p. 6.) It submits that the arbitrator erred in four respects: (1) she exceeded her jurisdiction by resolving controversies that were not part of her submission; (2) she incorrectly concluded that plaintiff UPAGRA did not prove that defendant Telemundo subcontracted personnel to perform the functions formerly performed by the laid-off master control and programming editing employees; (3) she incorrectly found that defendant Telemundo did not breach the CBA by laying off the master control and programming editing employees; and (4) she did not act according to law by shifting the burden of proof onto plaintiff UPAGRA. *Id.* at p. 12. The Court finds plaintiff UPAGRA's arguments unavailing.

### A. The Arbitrator's Jurisdiction & Finding Regarding Defendant Telemundo's Alleged Subcontracting

■ Plaintiff UPAGRA first urges the Court to find that the arbitrator exceeded the scope of the arbitral submission by considering the issue of defendant Telem-

undo's alleged subcontracting of personnel from outside the Appropriate Unit. The record, however, belies that assertion. Because the parties were unable to reach an agreement before arbitration commenced, the arbitrator properly prepared the submission based on the parties' draft submissions and the CBA.[4] In determining which issues to resolve, the arbitrator was required to take into consideration both parties' arguments. (Docket No. 12–1 at p. 32 n. 7.) The arbitrator, therefore, properly took into consideration plaintiff UPAGRA's "principal allegation ... that personnel from outside the Appropriate Unit [were] subcontracted to perform the residual functions that survived the automation of the "[m]aster [c]ontrol" and the programming editions...." *Id.* at p. 41. The final arbitral submission called upon the arbitrator to determine whether defendant Telemundo breached the CBA, and plaintiff UPAGRA cannot seriously argue that the arbitrator erred in considering its own contention to her that defendant Telemundo did so by subcontracting outside personnel.

■ Furthermore, the arbitrator's conclusion that plaintiff UPAGRA failed to prove the existence of subcontracting is sound. After giving each of the parties an adequate opportunity to present its evidence and arguments, an arbitrator must determine "the truth respecting material matters in controversy, as he [or she] believes it to be, based upon a full and fair consideration of the entire evidence and after he [or she] has accorded each witness and each piece of documentary evidence,

---

4. The Bureau's Regulations for the Internal Order of the Arbitration Services specifically provide that "[i]n the eventuality the parties are unable to reach a submission agreement by the date of the hearing, the arbitrator shall require a draft submission agreement from each party prior to the commencement of

such hearing. The arbitrator shall determine the precise issue(s) to be resolved taking into consideration the [CBA], **the arguments of the parties**[,] and the evidence submitted. He/she shall have broad discretion to issue remedies." (Docket No. 12–1 at p. 32 n. 7) (emphasis added).

the weight, if any, to which he [or she] honestly believes it to be entitled." *Hoteles Condado Beach, La Concha & Convention Ctr. v. Union De Tronquistas Local 901,* 763 F.2d 34, 39 (1st Cir.1985). An arbitrator therefore judges the persuasiveness of evidence presented in an arbitration proceeding, and absent exceptional circumstances, a court may not overturn an award based on that determination. *Id.* at 39–40. In this case, the arbitrator heard testimony from numerous witnesses and found persuasive the testimony of two Telemundo employees who averred that they were the ones who performed the residual segmentation and editing work. (Docket No. 12–1 at p. 42.) The arbitrator then made the key finding that no evidence contradicted the two employees' testimony or even established that the residual tasks performed in the Miami hub were carried out by additional personnel, or that any personnel was hired in Puerto Rico. *Id.* Because an arbitrator's resolution of credibility issues does not constitute grounds for vacating the arbitration award, *Int'l. Bros. of Firemen & Oilers, Local 261 v. Great N. Paper Co.,* 765 F.2d 295 (1st Cir.1985), the Court declines to overturn the arbitrator's award based on her conclusion that no persuasive subcontracting evidence was presented.

## B. The Arbitrator's Ruling that Master Control and Programming Editing Employees' Layoffs Did Not Breach the CBA

■ Plaintiff UPAGRA next argues that the arbitrator erred by "not holding that the layoffs of master control and programming editing employees breached the [CBA], when clearly they violate its essence." (Docket No. 12–1 at p. 12.) Essentially, plaintiff UPAGRA contends that the arbitrator should have evaluated the evidence differently, and attempts to retry the arbitration case in a judicial forum.

Because the arbitrator's interpretation of the CBA is both plausible and well within the four corners of the agreement, however, the Court upholds her finding that defendant Telemundo did not breach the CBA. *See El Dorado,* 961 F.2d at 320 ("[A] court should uphold an award that depends on an arbitrator's interpretation of a collective bargaining agreement if it can find, within the four corners of the agreement, any plausible basis for that interpretation.").

To determine whether defendant Telemundo breached the CBA, the arbitrator consulted specific provisions of the CBA and heard evidence from both parties. She then assessed the credibility, weight, and relevance of the evidence and determined, not unreasonably, that defendant Telemundo's layoff process "adhered to the contractual principles binding the parties." (*See* Docket No. 12–1.) Ultimately, the arbitrator disposed of plaintiff UPAGRA's complaint because she found that the CBA permitted defendant Telemundo (1) "to administer and manage its business, including the operations and the work methods to be implemented and used to those ends;" (2) "to introduce new technology and to exercise it with the limitation of complying with the obligations provided by the [CBA];" and (3) to "reduce personnel and work hours by reason of economy, by reason of introducing new technology or for any other reason, as long as the reasons are justified and reasonable." (Docket No. 12–1 at p. 41.)

The arbitrator's conclusions are directly derived from the plain language of the CBA, and the Court therefore concludes that the arbitrator's interpretation drew its essence from the CBA. *See Labor Relations Div. of Constr. Indus.,* 29 F.3d at 746 (citing *Chicago Newspaper Publishers' Ass'n. v. Chicago Web Printing Pressmen's Union,* 821 F.2d 390, 394–95 (7th

Cir.1987) (" '[I]t is only when the arbitrator must have based his [or her] award on some body of thought, or feeling, or policy, or law that is outside the contract . . . that the award can be said not to 'draw its essence from the collective bargaining agreement.' ' ")). Article VII of the CBA provides the compensation regimen for "whenever any employee . . . is laid off by reason of economics or the introduction of new equipment and new technology," (Docket No. 12–1 at p. 33); Article XII bestows upon defendant Telemundo "control of all matters related to the administration and management of its business, including, but not to be understood as a limitation, the operations, the personnel's work and production methods, the right to hire, supervise, promote, transfer, discipline, suspend employees and in general to all the functions inherent in the administration and management of the business," *id.* at p. 34; Article XL explicitly states that defendant Telemundo "may reduce personnel and work hours by reason of economics, by reason of introducing new technology or by any other reason, as long as the reasons are justified and reasonable," *id.,* and it also acknowledges that plaintiff UPAGRA "recognizes [defendant Telemundo's] right to introduce new technology. [Defendant Telemundo] shall exercise said right complying with the obligations provided in this [CBA] and affecting the least possible number of employees of the Appropriate Unit," *id.* at p. 35. Given the CBA's plain language, the arbitrator's interpretation of the contract was plausible.

In addition to the CBA's plain language, the arbitrator's analysis of the credibility of witnesses, weight and relevance of the evidence, and the merits of both parties' contentions demonstrates that she derived her conclusion from a plausible interpretation of the evidence. The Court therefore refuses to find that the award was (1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact. *See New England Health Care Emps. Union v. R.I. Legal Serv.,* 273 F.3d 425, 427 (1st Cir.2001). Accordingly, the Court rejects plaintiff UPAGRA's request to vacate the arbitrator's award for concluding that defendant Telemundo did not violate the CBA.

### C. Arbitrator's Alleged Shifting of the Burden of Proof

Finally, plaintiff UPAGRA contends that the arbitrator concluded that the layoffs did not breach the CBA "not because [defendant Telemundo] proved that the same were due to a change in the technology and that they were justified, reasonable and in accordance with the [CBA], but rather because allegedly [plaintiff UPAGRA] did not present evidence which would prove the subcontracting by [defendant] Telemundo." (Docket No. 12–1 at p. 21.) It cites *J.T.T. v. Hato Rey Psychiatric Hosp.,* 119 D.P.R. 62, 71 (1987) for the proposition that "the burden of proof lies on the party that supports the affirmative of the issue in controversy," and argues that the arbitrator incorrectly concluded defendant Telemundo did not breach the CBA by basing her analysis "mostly on" plaintiff UPAGRA's alleged failure to establish subcontracting, which is an incorrect shifting of the burden of proof to plaintiff UPAGRA. (Docket No. 12–1 at pp. 21–22.) Because defendant Telemundo was the party who "failed" to show that the layoffs were justified, plaintiff UPAGRA maintains that the arbitrator should have had no other alternative than to conclude that defendant Telemundo breached the CBA. *Id.*

The Court disagrees. The arbitrator did not find that there was no breach of the CBA simply because plaintiff UPAGRA failed to present evidence proving subcontracting. The arbitration award clearly states that the layoff process defendant Telemundo engaged in "adhered to the contractual principles binding the parties, as those have been mentioned." (Docket No. 12–1 at p. 41.) Various articles of the CBA, as discussed above, explicitly addressed defendant Telemundo's right to reduce personnel and work hours by reason of economy and also by reason of introducing new technology, both of which the arbitrator found to have occurred in this case.

Plaintiff UPAGRA misconstrues the burden of proof applicable to the issue of subcontracting before the arbitrator. In her award, the arbitrator explained, "[G]iven [plaintiff UPAGRA]'s allegation that there was subcontracting by [defendant Telemundo] to perform functions of the Appropriate Unit, [it] must show that such subcontracting did in fact occur, and thus cause the burden of proof to shift to [defendant Telemundo] to prove that said contracting did not breach the provisions of the [CBA] between the parties." (Docket No. 12–1 at p. 41.) Citing *P.R. Labor Relations Bd. v. Elec. Power Auth.*, 117 D.P.R. 222, 17 P.R. Offic. Trans. 265 (1986), she conveyed that "once the Union shows … that the employer did carry out the subcontracting objected to … it corresponds to the employer to show that the subcontracting in controversy does not constitute a breach of the agreement…." (Docket No. 12–1 at p. 41.) In other words, the burden of proof shifts from the employee to the employer; initially the employee must establish that the employer has subcontracted, and after making such a showing, the burden of proof shifts to the employer to prove that the subcontracting does not violate the CBA. *Elec. Power Auth.*, 117 D.P.R. 222. At least preliminarily, therefore, plaintiff UPAGRA did indeed have the task of establishing that (1) the CBA prohibits defendant Telemundo from subcontracting work, and (2) that defendant Telemundo carried out subcontracting. It was thus appropriate in this case for the arbitrator to consider whether plaintiff UPAGRA presented evidence as to meet its initial burden, and her conclusion that plaintiff UPAGRA failed to establish subcontracting did not violate the proper legal standard. Accordingly, the arbitration award must stand.

## IV. CONCLUSION

For the reasons discussed above, the Court **AFFIRMS** the arbitration award and **DENIES** plaintiff UPAGRA's motion for hearing, (Docket No. 9).

**IT IS SO ORDERED.**